James C. Shah
Shepherd, Finkelman, Miller & Shah, LLP
201 Filbert Street, Ste. 201
San Francisco, CA  94133
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
Email: jshah@sfmslaw.com

[Additional Counsel listed on signature page]

*Attorneys for Plaintiff and the Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| YVETTE DeANDA, individually and on behalf of a Class of similarly situated individuals, <br><br> Plaintiff, <br><br> vs. <br><br> DOORDASH, INC., <br><br> Defendant. | Case No.: 3:19-cv-8305 <br><br> COMPLAINT FOR: <br> VIOLATIONS OF THE CLRA <br> VIOLATIONS OF THE UCL <br> VIOLATIONS OF THE FAL |

Plaintiff, Yvette DeAnda ("Plaintiff"), on behalf of herself and a class of other similarly situated consumers (defined below), brings this action against Defendant, DoorDash, Inc. ("DoorDash" or "Defendant").

## NATURE OF THE ACTION

1.     DoorDash provides food delivery services through its website, www.doordash.com, and mobile phone application, or "app," in over 4,000 cities throughout the United States.  DoorDash fulfills its orders using delivery drivers, who DoorDash characterizes as independent contractors, known as "Dashers."  Upon information and belief, there are tens of thousands of Dashers fulfilling orders placed through DoorDash.

2.     Plaintiff brings this action on behalf of herself and a class of similarly situated individuals who were subjected to DoorDash's unlawful and fraudulent practices of misrepresenting to customers the nature of the tipping options presented to consumers in connection with its delivery

services.  Specifically, DoorDash's platform includes an option to add a tip for Dashers.  However, until September 2019, these tips were not remitted to the Dashers, and were instead pocketed by DoorDash and used to cover base pay for deliveries.  DoorDash's conduct is equally applicable to the Class and constitutes an unfair, unlawful, and fraudulent business practice in violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; an unfair method of competition and unfair or deceptive practice in violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; and false advertising in violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

## THE PARTIES

3.      Plaintiff is a consumer in San Diego, California who has suffered injury in fact and has otherwise been damaged as a result of DoorDash's wrongful conduct.  Plaintiff's CLRA declaration is attached hereto as "Exhibit A."

4.      Defendant is a Delaware corporation with its headquarters and principal place of business located at 901 Market Street, Suite 600, San Francisco, California.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, since members of the class are citizens of states different from states in which Defendant is a citizen and because the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d).

6.      This Court has personal jurisdiction over Defendant because DoorDash owns, operates, and/or controls business operations in this judicial district, because its principal place of business is located within this judicial district, and because it does business throughout this judicial district.

7.      Venue properly lies in this district because a substantial part of the acts giving rise to Plaintiff's claims occurred in this district, and because Defendant is headquartered in this district and has conducted substantial business in this judicial district.

8.      The deceptive practices alleged in this Complaint were conceived, reviewed, approved, and otherwise controlled from Defendant's headquarters in San Francisco, California.

## FACTUAL BACKGROUND

9.      DoorDash allows consumers to order and pay for food delivery service from

2

participating restaurants electronically through its website, www.doordash.com, and from its mobile app.  Payment for delivery service and any tips added by consumers through the app or website are made from consumers' credit card accounts after the consumer has entered their card information on the website or app.

10.     Pursuant to the terms of the agreement between DoorDash and its Dashers, Dashers are to receive a "minimum guaranteed payment" from DoorDash for each delivery the Dasher completes.

11.     On its website and app, DoorDash offers consumers the option to include a gratuity for Dashers.

12.     Prior to a recent policy change implemented by DoorDash, when a consumer opted to leave a tip for a Dasher, however, DoorDash did not remit the full amount of this money to the Dasher in addition to the minimum guaranteed payment.  Instead, DoorDash used that money to offset its monetary obligations to the Dasher such that the gratuity that a consumer intended to go directly to the Dasher instead inured to the benefit of DoorDash.

13.     For example, if a Dasher made a delivery that had a guaranteed minimum payment of $3.00 and the consumer opted not to give the Dasher a gratuity, the Dasher received $3.00, all of which came from DoorDash.  In the same situation, if a consumer opted to tip the Dasher $1.00, with the intention of giving that additional money to the Dasher for the services he or she provided, the Dasher still received $3.00 (rather than the $3.00 plus the $1.00 tip) and DoorDash used the tip to reduce its financial obligation to the Dasher from $3.00 to $2.00.

14.     DoorDash's representation that the optional payment was a "tip" added to the cost of the order and delivery was false, misleading, and likely to deceive members of the public.  The term "tip" suggests an amount paid to the Dasher for service that is distinct from the cost of the order and delivery fee.  Otherwise, there is no reason to distinguish between the delivery fee and the tip, a distinction that DoorDash explicitly made.  By retaining consumer tips and using them to pay Dashers the minimum guaranteed amount, DoorDash misrepresented (a) the nature of its services, (b) how it handled consumers' money, and (c) charged an undisclosed fee.

15.     DoorDash's practices have recently been reported on by, *inter alia*, the New York Times[1] and the Washington Post.[2]  In a July 21, 2019 article, New York Times reporter Andy Newman ("Newman") recounted his experience as a Dasher for DoorDash.  He reported that DoorDash offers Dashers a guaranteed minimum payment for each job.  For Newman's first delivery, the guaranteed minimum payment was $6.85.  The customer to whom he made the delivery left a $3.00 tip via the DoorDash app, but Newman still only received $6.85 as DoorDash used the tip intended for him to offset its guaranteed minimum payment to Mr. Newman.

16.     The Washington Post article, published on July 24, 2019, discussed DoorDash's stated intention to revise its tipping policy.  The article quoted July 23, 2019 tweets from DoorDash CEO, Tony Xu ("Xu"), which expressed DoorDash's intention to change its payment model to "ensure that Dashers' earnings will increase by the exact amount a customer tips on every order."  The Washington Post article also quoted Rachel Lauter, executive director of the labor organization Working Washington, who said that DoorDash "has been swiping customer tips since they first deployed their deceptive pay model in 2017," and that the company needs to explain how it will ensure those two years of tips are "accounted for and redistributed to the workers who should have received them in the first place," as the customer intended.

17.     Despite Xu's July 23, 2019 promise that specific details regarding DoorDash's policy changes would be revealed "in the coming days," there was no further word on the matter until an August 22, 2019 blog post by Xu, entitled "Working to Strike a Better Balance."[3]

18.     In the blog post, Xu stated that he was sharing more details about "changes [DoorDash is] making to how earning and tipping will work on DoorDash."  Xu indicated that the "improvements" would be rolled out in September 2019.  Under the new model, Xu promised that, unlike in the then-current model, "[e]very dollar customers tip will be an extra dollar in their Dasher's pocket."  Xu further wrote that DoorDash would be guided by several key principles, including the principle that "[e]very customer should feel like their tip matters."  Xu further stated

---

[1] *See My Frantic Life as a Cab-Dodging, Tip Chasing Food App Deliveryman*, N.Y. TIMES (July 21, 2019), *available at* https://www.nytimes.com/2019/07/21/nyregion/doordash-ubereats-food-app-delivery-bike.html.

[2] *See DoorDash to change its controversial tipping policy after outcry,* WASH. POST (July 24, 2019), *available at* https://www.washingtonpost.com/business/2019/07/24/doordash-change-its-controversial-tipping-policy-after-outcry.

[3] Tony Xu, *Working to Strike a Better Balance*, DOORDASH (Aug. 22, 2019), *available at* https://blog.doordash.com/working-to-strike-a-better-balance-e1f66c76fca1.

that "[u]nder our old model, DoorDash would boost pay if a customer left little or no tip.  Although boost pay was intended to help Dashers, we recognize that it also had the unintended effect of making some customers feel like their tips didn't matter.  Under our new model, every dollar a customer tips will be an extra dollar in their Dasher's pocket. If you leave a $3 tip on your order, your Dasher will earn an extra $3."

19.     Xu's blog post is disingenuous and misleading.  First, DoorDash did not boost pay to help Dashers when a customer chose not to tip them – the pay the Dashers received remained the same, regardless of the tip.  Instead, when a customer left a tip, rather than paying that tip to the Dasher, as the customer intended, DoorDash used the tip to offset its financial obligation to the Dasher.  Second, the problem was not that customers felt "like their tips didn't matter."  Rather, the problem was that DoorDash took the customers' money, which customers intended to inure to the benefit of the Dasher and used it for its own benefit instead.

20.     Although DoorDash claims to have changed its payment policy as of September 24, 2019 and now purportedly ensures that Dashers receive the entire amount of any customer-provided tip, it has nonetheless indicated that it will not voluntarily pay Dashers back pay for the tips it withheld from them for the last two years.[4]  In addition, DoorDash has not provided any signal that it intends to compensate consumers who paid tips that DoorDash used to pay the minimum guaranteed payment.  As a result, DoorDash will retain the enormous amounts of funds, intended for Dashers, that it took from consumers and used for its own benefit.

A.     **DoorDash's Representations About Dashers' Payment**

21.     When consumers paid for their orders under the previous tipping policy, DoorDash provided no indication that Dashers would not receive the entirety of any selected tip.  During the process of confirming a delivery order, consumers were provided the option of including a "Dasher Tip," and the DoorDash platform offered suggested tips in various amounts and also permitted consumers to submit "custom" tips to Dashers in an amount chosen by the customer.  DoorDash did not provide any further information about its tipping policy as consumers confirmed and completed their orders.

---

[4] *See* Megan Rose Dickey, *Despite tipping policy changes, DoorDash says back pay is not "at issue here"*, TECHCRUNCH (Sept. 13, 2019), *available at* https://techcrunch.com/2019/09/13/despite-tipping-policy-changes-doordash-says-back-pay-is-not-at-issue-here/.

22.     Instead of disclosing its policy, DoorDash included a small enclosed "i," whether the order was placed via its website or mobile app, which, if and only if it is clicked, directed a consumer to a webpage entitled, "How Is Your Dasher Paid?"[5]  Prior to the policy change implemented on September 24, 2019, this page failed to make clear to consumers that Dashers were not receiving the entirety of any selected tip amount.

23.     Even if a consumer happened to click on the encircled "i," the notice would not have clearly informed the consumer that in most cases, any selected tip amount simply offset DoorDash's guaranteed minimum payments and failed to provide extra compensation to the Dasher, for whom the entire tip amount was intended.

24.     DoorDash did address its payment model in a prior version of its FAQ webpage, which was not immediately accessible at the point of purchase, but even its representations on the page were confusing and misleading.  Among other things, through this FAQ page, DoorDash encouraged consumers to tip, but did not disclose that consumers' tips would typically fail to increase the Dashers' pay for the vast majority of deliveries.  For example, in answering a hypothetical question, "Should I tip my Dasher?," DoorDash offered the following response:

> In general, we recommend you tip your Dasher and ***Dashers always receive 100% of tips***.
>
> Dashers are independent contractors who work hard to provide you with a great delivery experience.  We encourage you to tip an amount that you believe is fair to thank your Dasher.  Standard tipping ranges are similar to those of the broader service industry.  We provide a suggested tip amount, though you're welcome to adjust the percentage or specify the exact dollar amount you'd like to leave for your Dasher.
>
> Here's how Dasher pay is calculated.  Dashers are shown a guaranteed amount that they will earn when they are offered a delivery.  In addition to 100% of the tip, Dashers will always receive at least $1 from DoorDash.  Where the sum of $1 plus tip is less than the guaranteed amount, DoorDash will provide a pay boost to make sure the Dasher receives the guaranteed amount.  Where that sum is more than the guaranteed amount, the Dasher keeps the extra amount.

(emphasis added).

---

[5] *See How Is Your Dasher Paid?*, DOORDASH (accessed Nov. 27, 2019)
https://help.doordash.com/consumers/s/article/How-do-Dasher-earningswork?
language=en_US.

25.     In addition to the fact that this information was not clearly relayed to consumers at the point of purchase, DoorDash's response to this FAQ was ambiguous, confusing, and misleading. DoorDash encouraged consumers to tip and represented that Dashers always receive 100% of tips with full knowledge that, in most instances, DoorDash would actually receive the entire benefit of any selected tip.  A reasonable consumer would understand and expect, based on DoorDash's representations, that tips would be provided directly to Dashers *in addition to* any payment made to them by DoorDash.  Instead, consumers' tips were utilized to reduce DoorDash's labor costs.

26.     If DoorDash clearly disclosed is Dasher payment model to consumers, they would have opted against adding a tip rather than help subsidize the payments DoorDash owed to its Dashers.

### B.     Plaintiff's Experiences

27.     On August 7, 2019, Plaintiff placed an order through the DoorDash app for food delivery from Pita Pit.  The delivery address was 110 Plaza, 110 A St., San Diego, CA  92101.  The total cost for the food, including tax, was $24.74.  Plaintiff was charged a "Service fee" of $2.30 and added a "Dasher tip" in the amount of $2.00.

28.     Upon information and belief, based upon DoorDash's policy in effect on August 7, 2019, part or all of the tip that Plaintiff intended to be paid to the Dasher was, instead, used by DoorDash to subsidize part of the guaranteed minimum payment it owed to the Dasher for that delivery.[6]

29.     On August 10, 2019, Plaintiff placed an order through the DoorDash app for food delivery from Pita Pit.  The delivery address was 110 Plaza, 110 A St., San Diego, CA  92101.  The total cost for the food, including tax, was $21.39.  Plaintiff was charged a "Service fee" of $1.99, a "Delivery fee" of $1.99 and added a "Dasher tip" in the amount of $2.00.

30.     Upon information and belief, based upon DoorDash's policy in effect on August 10, 2019, part or all of the tip that Plaintiff intended to be paid to the Dasher was, instead, used by DoorDash to subsidize part of the guaranteed minimum payment it owed to the Dasher for that delivery.[7]

31.     On August 16, 2019, Plaintiff placed an order through the DoorDash app for food delivery from Pita Pit.  The delivery address was 110 Plaza, 110 A St., San Diego, CA  92101.  The

---

[6] A true and correct copy of the DoorDash receipt for the order is attached hereto as Exhibit "B."
[7] A true and correct copy of the DoorDash receipt for the order is attached hereto as Exhibit "C."

total cost for the food, including tax, was $18.71.  Plaintiff was charged a "Service fee" of $1.74, a "Delivery fee" of $1.99 and added a "Dasher tip" in the amount of $2.00.

32.     Upon information and belief, based upon DoorDash's policy in effect on August 16, 2019, part or all of the tip that Plaintiff intended to be paid to the Dasher was, instead, used by DoorDash to subsidize part of the guaranteed minimum payment it owed to the Dasher for that delivery.[8]

33.     On August 24, 2019, Plaintiff placed an order through the DoorDash app for food delivery from Karina's Ceviches & More.  The delivery address was 110 Plaza, 110 A St., San Diego, CA  92101.  The total cost for the food, including tax, was $31.03.  Plaintiff was charged a "Service fee" of $2.88, a "Delivery fee" of $1.99, and added a "Dasher tip" in the amount of $1.50. Although the new Dasher payment policy change was announced via blog post on August 22, 2019, the policy did not take effect until September 24, 2019.

34.     As a result, based upon DoorDash's policy in effect on August 24, 2019, part or all of the tip that Plaintiff intended to be paid to the Dasher was, instead, used by DoorDash to subsidize part of the guaranteed minimum payment it owed to the Dasher for that delivery.[9]

35.     Plaintiff was thus misled and proximately caused to pay more for food delivery service than she would have had she known that the tip would not go to the Dasher and would instead be taken by DoorDash.  But for the misrepresentations by DoorDash, Plaintiff would not have paid the selected tips which she paid via DoorDash's platform.

## CLASS ACTION ALLEGATIONS

36.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) on behalf of herself and the following class ("Class"):

> **Class:**  All individuals in the United States who arranged for food delivery through DoorDash's platform and paid any amount that was designated or otherwise represented, in whole or in part, as a gratuity or tip prior to September 24, 2019.
>
> Specifically excluded from the Class are, Defendant, including its officers, directors and employees and members of their immediate family, and the Judge to whom this case is assigned and his or her immediate family.

---

[8] A true and correct copy of the DoorDash receipt for the order is attached hereto as Exhibit "D."
[9] A true and correct copy of the DoorDash receipt for the order is attached hereto as Exhibit "E."

8

Plaintiff reserves the right to modify the Class definition as discovery and/or further investigation so warrant.

37.     This action has been brought and may properly be maintained as a class action as Plaintiff and the Class satisfy all requirements for maintaining this action as a class action. The number of members in the Class is so numerous as to render joinder impracticable.  The exact number of Class members is unknown at this time but can be determined through Defendant's records.  Plaintiff believes there are thousands, if not tens of thousands, of Class members.

38.     There are questions of law and fact common to the Class that predominate over any individual issues, including:

a.      Whether DoorDash represented on its app and website that the customer tips would be remitted to Dashers;

b.      Whether DoorDash failed to disclose to consumers that money the consumers intended to be paid to Dashers as a gratuity was actually used to offset DoorDash's financial obligations;

c.      Whether DoorDash kept or otherwise failed to remit the full portion of the amount that was represented as a tip to Dashers;

d.      Whether DoorDash's conduct violated the CLRA;

e.      Whether DoorDash's conduct violated the UCL;

f.      Whether DoorDash's conduct violated the FAL;

g.      Whether Plaintiff and members of the Class have suffered injury in fact or otherwise been damaged as a result of DoorDash's conduct;

h.      Whether Plaintiff and members of the Class and the public are entitled to injunctive relief restraining DoorDash from reverting to its previous policies; and

i.      Whether Plaintiff and members of the Class and the public are entitled to injunctive relief in the form of corrective advertising from DoorDash advising the general public of its previous policy regarding tipping and the changes in the policy.

39.     Plaintiff's claims are typical of the claims of the proposed Class, as all Class members were similarly affected by Defendant's conduct described in this Complaint.

40.     Plaintiff will fairly and adequately represent and protect the interests of the proposed Class.  Plaintiff does not have any interests antagonistic to those of the Class.  Plaintiff has retained competent counsel experienced in the prosecution of this type of litigation.

41.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because the expense and burden of individual litigation would make it difficult or impossible for individual members of the Class to redress the wrongs done to them.  The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.  Therefore, class certification is appropriate under Rule 23(b)(3).

42.     Class certification is also appropriate under Rule 23(b)(1) because the prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to individual Class members that would, as a practical matter, be dispositive of the interests of the other members not parties to this adjudication and/or substantially impair their ability to protect these interests.

43.     Class certification is also appropriate under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief or corresponding declaratory relief appropriate for the Class.

<u>**COUNT I**</u>
**VIOLATION OF THE CLRA**
**(Cal. Civ. Code §§ 1750,** *et seq.***)**

44.     Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if such had been set forth in full herein.

45.     The CLRA prohibits unfair methods of competition and unfair or "deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."  Cal Civ. Code § 1770.

46.     Plaintiff is a "consumer" as defined by Cal. Civil Code §1761(d) and DoorDash's food delivery service is a "service" within the meaning of the CLRA.

47.     Defendant engaged in unfair and deceptive acts in violation of the CLRA by perpetrating the practices described above, and by knowingly and intentionally misleading consumers to believe that the entirety of the tips they provided would exclusively benefit the Dashers, rather than inure to the benefit of DoorDash, allowing it to subsidize Dashers' payments.  These acts and practices violate, at a minimum, the following sections of the CLRA:

(a)(5)  Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

(a)(9)  Advertising goods and services with the intent not to sell them as advertised;

(a)(14) Representing that its transactions with consumers involved rights and obligations regarding the payment of a gratuity which, in fact, they did not have or involve; and

(a)(16) Representing that the subject of a transaction has been supplied in accordance with a previous representation when it was not.

48.     By engaging in the foregoing unfair or deceptive conduct, Defendant has actively concealed and failed to disclose material facts about the true nature of charges made to consumers in connection with its services.

49.     The representations and omissions set forth above are material facts that a reasonable consumer would have considered important in deciding whether to purchase and pay for Defendant's services.

50.     Plaintiff and Class members justifiably acted or relied upon, to their detriment, the misrepresentations and omissions set forth above in using and paying for Defendant's services. Defendant's acts were intended to be deceptive and/or fraudulent.

51.     As a direct and proximate cause of Defendant's violations of the CLRA, Plaintiff and Class members suffered an injury in fact and have suffered monetary harm in that they spent money that they otherwise would have saved but for Defendant's acts of unfair competition and deceptive practices.

52.     Pursuant to Cal Civ. Code § 1782, Plaintiff served Defendant with a letter on October 31, 2019, notifying Defendant of its violations of the CLRA and seeking that Defendant (1) immediately return to consumers any and all gratuities paid through DoorDash's platform (whether the orders were placed on DoorDash's website or app) which were retained by DoorDash rather than provided to Dashers, and (2) cease and desist from the unlawful conduct described herein.  Defendant

failed to offer an appropriate remedy to cure the foregoing CLRA violations within thirty (30) days after receipt of Plaintiff's notice letter.

53.     As a result, Plaintiff seeks all available damages for the aforementioned violations of the CLRA, including restitution for the money paid as tips on DoorDash's platform that Plaintiff and members of the Class would not have paid but for Defendant's misrepresentations and unfair and deceptive practices.

54.     Additionally, Plaintiff seeks all available injunctive relief, including public injunctive relief ordering DoorDash to promulgate corrective advertising advising the Class and general public about the change in DoorDash's payment policy (to the extent its payment policy has actually changed) and enjoining DoorDash from reverting to its previous, misleading policy.

## COUNT II
### VIOLATION OF THE UCL (UNFAIR BUSINESS PRACTICE)
### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

55.     Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if such had been set forth in full herein.

56.     The UCL prohibits unfair competition and unfair, unlawful or fraudulent business practices.

57.     Plaintiff and Defendants are each "person(s)" within the meaning of California's UCL (Cal. Bus. & Prof. Code §§ 17200 *et seq.*).

58.     Cal. Bus & Prof. Code § 17204 authorizes a private right of action on both an individual and a representative basis and confers standing to prosecute actions for relief not only on certain public enforcement officials, but on private individuals—*i.e.*, "any person acting for the interests of itself, its members or the general public."

59.     Thus, a private plaintiff who has suffered a financial injury may sue to obtain relief for others comprising the general public.

60.     Defendant has engaged in unfair competition and unfair, unlawful or fraudulent business practices by perpetrating the conduct, statements, and omissions described above, and by knowingly and intentionally misrepresenting tips as gratuities paid to Dashers, when the tips were instead retained by Defendant and used to cover base pay for its Dashers.

61.     These acts and practices have deceived Plaintiff and were likely to deceive the public.

62.     The injuries suffered by Plaintiff and Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are the injuries sustained the variety of which Plaintiff and Class members could have reasonably avoided.

63.     Plaintiff seeks restitutionary disgorgement of all monies and revenues generated as a result of such practices.

64.     Additionally, Plaintiff seeks all available injunctive relief, including public injunctive relief requiring DoorDash to promulgate corrective advertising advising the Class and general public about the change in DoorDash's payment policy (to the extent its payment policy has changed) and enjoin DoorDash from reverting to its previous, misleading policy.

**COUNT III**
**VIOLATION OF THE FAL (FALSE ADVERTISING)**
**(Cal. Bus. & Prof. Code § 17500)**

65.     Plaintiff incorporates by reference the allegations of all foregoing paragraphs as if such had been set forth in full herein.

66.     The California FAL prohibits advertising goods or services utilizing "any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ." Cal. Bus. & Prof. Code § 17500.

67.     Defendant has engaged in false advertising by knowingly and intentionally misrepresenting tips and/or gratuities as sums paid in whole to Dashers, when, in actuality, DoorDash keeps the tips to cover the guaranteed base pay for Dashers.

68.     These acts and practices have deceived Plaintiff and were likely to deceive members of the public.  Undoubtedly, a reasonable consumer would understand payments represented as "tips" to be gratuities paid directly and fully to Dashers.

69.     Defendant knew, or should have known, that its representations regarding tips on its ordering platform were false and misleading.

70.     Defendant's acts and practices are unlawful because they violate Cal. Bus. & Prof. Code § 17500.  Plaintiff seeks restitutionary disgorgement of all monies and revenues generated as a result of such practices pursuant to Cal. Bus. & Prof. Code § 17535

71.     Additionally, Plaintiff seeks all available injunctive relief, including public injunctive relief ordering DoorDash to promulgate corrective advertising advising the class and general public about the change in DoorDash's payment policy (to the extent its payment policy has actually changed) and enjoining DoorDash from reverting to its previous, misleading policy.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and members of the Class, respectfully requests that this Court:

      a.     issue public injunctive relief, on behalf of and/or for the benefit of the general public, to protect and enforce important public rights and restrain conduct injurious to the public;

      b.     determine that the claims alleged herein may be maintained as a class action and issue an order certifying the Class as defined above;

      c.     appoint Plaintiff as the representative of the Class and her counsel as Class counsel;

      d.     award all actual, general, special, incidental, statutory, punitive, treble and consequential damages to which Plaintiff and Class members are entitled;

      e.     award pre-judgment and post-judgment interest on such monetary relief; award reasonable attorneys' fees and costs; and

      f.     grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated: December 19, 2019          Respectfully submitted,

**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**

By:  /s/ James C. Shah
James C. Shah (SBN 260435)
201 Filbert Street, Ste. 201
San Francisco, CA  94133
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
Email: jshah@sfmslaw.com

Michael Owens (PHV forthcoming)
**EDGAR LAW FIRM LLC**
2600 Grand Blvd., Ste. 400
Kansas City, MO  64108
Telephone: (816) 531-0033
Facsimile: (816) 531-3322
Email: MRO@edgarlawfirm.com

*Attorneys for Plaintiff*