GIBSON, DUNN & CRUTCHER LLP
JOSHUA S. LIPSHUTZ, SBN 242557
  jlipshutz@gibsondunn.com
555 Mission Street, Suite 3000
San Francisco, CA 94105-0921
Telephone:    415.393.8200
Facsimile:    415.393.8306

THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
MICHAEL HOLECEK, SBN 281034
  mholecek@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone:    213.229.7000
Facsimile:    213.229.7520

Attorneys for Defendant DOORDASH, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| YVETTE DeANDA, individually and on behalf of a Class of similarly situated individuals,<br><br>                    Plaintiff,<br><br>        v.<br><br>DOORDASH, INC.,<br><br>                    Defendant. | CASE NO. 4:19-cv-08305-JST<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Action Filed:  December 20, 2019<br><br>Hearing Date: April 29, 2020<br>Hearing Time: 2:00 p.m.<br>Hearing Place: Courtroom 6 – 2nd Floor<br>Honorable Judge Jon S. Tigar |

Gibson, Dunn & Crutcher LLP

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 29, 2020, at 2:00 p.m., or as soon as the matter may be heard before the Honorable Jon S. Tigar of the United States District Court for the Northern District of California in the Oakland Courthouse, Courtroom 6, 2nd Floor, 1301 Clay Street, Oakland, California 94612, Defendant DoorDash, Inc. will and does move this Court for an order compelling arbitration on an individual basis of the claims of Plaintiff Yvette DeAnda and staying this action.  This motion is brought on the grounds that Plaintiff's claims against DoorDash are subject to a valid and enforceable arbitration agreement that requires Plaintiff to arbitrate those claims on an individual basis. *See* 9 U.S.C. §§ 3–4.

DoorDash's motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declarations of Stanley Tang, Cody Aughney, and Joshua Lipshutz, any other matters of which the Court may take judicial notice, other documents on file in this action, and any oral argument of counsel.

Dated:  February 27, 2020                    GIBSON, DUNN & CRUTCHER LLP


By:___/s/  *Joshua Lipshutz*_____
                    Joshua S. Lipshutz

Attorneys for Defendant DOORDASH, INC.

Gibson, Dunn &
Crutcher LLP

Page

**CONTENTS**

INTRODUCTION ................................................................................................................. 1

STATEMENT OF RELEVANT FACTS ............................................................................. 2

    A.    DoorDash's Platform Connects Consumers, Restaurants, And Delivery Contractors ...................................................................................................... 2

    B.    Plaintiff Signs Up For DoorDash Accounts And Agrees To Arbitrate Her Disputes On An Individual Basis Under The 2016 T&C .............................. 2

    C.    Plaintiff Continues To Use The DoorDash Platform And Agrees To The 2018 ICA .......................................................................................................... 3

    D.    Plaintiff Continues To Use The DoorDash Platform And Agrees To The 2019 ICA .......................................................................................................... 4

    E.    Plaintiff Files This Lawsuit Against DoorDash Notwithstanding Her Agreements To Individually Arbitrate Disputes ........................................... 5

PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE HER CLAIMS ON AN INDIVIDUAL BASIS ........................................................................................................ 6

    A.    The Arbitration Agreement Is Governed By The Federal Arbitration Act ................... 6

    B.    The Arbitration Agreement Is Valid And Must Be Enforced ...................................... 8

        1.    The Delegation Clause In The Arbitration Agreement Is Valid And Enforceable ......................................................................................... 9

        2.    The Gateway Issues Under The FAA Have Been Satisfied ........................... 10

    C.    The Arbitration Class Action Waiver Is Valid And Enforceable .............................. 13

CONCLUSION ................................................................................................................... 14

Gibson, Dunn & Crutcher LLP

i

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995).................................................................................................................7

*Am. Express Corp. v. Italian Colors Rest.*,
    570 U.S. 228 (2013).................................................................................................................1

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)......................................................................................................1, 6, 13

*Azeveda v. Comcast Cable Commc'ns LLC*,
    2019 WL 5102607 (N.D. Cal. Oct. 11, 2019).................................................................1, 14

*Belnap v. Iasis Healthcare*,
    844 F.3d 1272 (10th Cir. 2017)..............................................................................................9

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015).................................................................................................9

*Burks v. Autonomy, Inc.*,
    2012 WL 13005954 (S.D. Fla. May 15, 2012) .......................................................................8

*Circuit City Stores, Inc. v. Ahmed*,
    283 F.3d 1198 (9th Cir. 2002)...............................................................................................10

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003).............................................................................................................7, 8

*Cooper v. WestEnd Capital Mgmt., L.L.C.*,
    832 F.3d 534 (5th Cir. 2016)...................................................................................................9

*DIRECTV, Inc. v. Imburgia*,
    136 S. Ct. 463 (2015) .............................................................................................................7

*Div. of Labor Law Enforc. v. Transpacific Transp.*,
    69 Cal. App. 3d 268 (1977)...................................................................................................11

*Dorman v. Charles Schwab Corp.*,
    780 F. App'x 510 (9th Cir. 2019) ....................................................................................1, 14

*Edwards v. DoorDash, Inc.*,
    2016 WL 7852532 (S.D. Tex. Dec. 8, 2016) .........................................................................6

*Edwards v. DoorDash, Inc.*,
    2017 WL 5514302 (S.D. Tex. Oct. 18, 2017).....................................................................6, 8

ii

Gibson, Dunn &
Crutcher LLP

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002) ................................................................................................................12

*Emilio v. Sprint Spectrum L.P.*,
    508 F. App'x 3 (2d Cir. 2013).................................................................................................9

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ...............................................................................1, 6, 7, 11, 14

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh Inc. v. 100 Oak Street*,
    35 Cal. 3d 312 (1983) .............................................................................................................9

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995).........................................................................................................7, 10

*Greenspan v. LADT, LLC*,
    185 Cal. App. 4th 1413 (2010)...............................................................................................9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) .............................................................................................................9

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) .............................................................................................................8, 9

*Kilgore v. KeyBank, Nat'l Ass'n*,
    718 F.3d 1052 (9th Cir. 2013)..............................................................................................10

*Levin v. Caviar, Inc.*,
    146 F. Supp. 3d 1146 (N.D. Cal. 2015) ...............................................................................12

*Long v. Provide Commerce, Inc.*,
    245 Cal. App. 4th 855 (2016)...............................................................................................12

*Magana v. DoorDash, Inc.*,
    343 F. Supp. 3d 891 (N.D. Cal. 2018) ...............................................................6, 8, 13, 14

*Manard v. Knology, Inc.*,
    2010 WL 2528320 (M.D. Ga. June 18, 2010) ........................................................................8

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
    89 Cal. App. 4th 1042 (2001)...............................................................................................11

*Mastrobuono v. Shearson Lehman Hutton*,
    514 U.S. 52 (1995).............................................................................................................7, 13

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship*,
    109 Cal. App. 4th 1705 (2003)...............................................................................................11

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)...................................................................................................11

iii

Gibson, Dunn &
Crutcher LLP

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016)................................................................................................9, 10

*Montes v. San Joaquin Cmty. Hosp.*,
2014 WL 334912 (E.D. Cal. Jan. 29, 2014)...................................................................................7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983)........................................................................................................................7, 9

*Nguyen v. Impac Mortg.*,
2018 WL 5880825 (C.D. Cal. Aug. 23, 2018)...........................................................................1, 14

*Prasad v. Pinnacle Prop. Mgmt. Servs., LLC*,
2018 WL 4599645 (N.D. Cal. Sept. 25, 2018) ..........................................................................1, 14

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010).............................................................................................................................9

*Rodriguez v. Am. Techs., Inc.*,
136 Cal. App. 4th 1110 (2006)..........................................................................................................7

*Rosenthal v. Great W. Fin. Sec. Corp.*,
14 Cal. 4th 394 (1996) ....................................................................................................................11

*Scott v. Yoho*,
248 Cal. App. 4th 392 (2016)............................................................................................................8

*Stewart v. Preston Pipeline Inc.*,
134 Cal. App. 4th 1565 (2005)........................................................................................................11

*Strotz v. Dean Witter Reynolds, Inc.*,
223 Cal. App. 3d 208 (1990)...........................................................................................................12

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) ............................................................................................12

*Tompkins v. 23andMe, Inc.*,
2014 WL 2903752 (N.D. Cal. June 25, 2014) ................................................................................12

*United Steelworkers v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960)...................................................................................................................10, 12

*Valencia v. Smyth*,
185 Cal. App. 4th 153 (2010).............................................................................................................7

*Volt Info. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
489 U.S. 468 (1989).........................................................................................................................13

*Wagner v. Stratton Oakmont, Inc.*,
83 F.3d 1046 (9th Cir. 1996)...........................................................................................................12

**Statutes**

9 U.S.C. § 2 ...................................................................................................................................6

9 U.S.C. § 3 ...............................................................................................................................1, 14

9 U.S.C. § 4 ...................................................................................................................................8

Cal. Civ. Code § 1550 ..................................................................................................................11

Cal. Civ. Code § 1556 ..................................................................................................................11

Cal. Civ. Code § 1565 ..................................................................................................................11

Gibson, Dunn &
Crutcher LLP

**INTRODUCTION**

Plaintiff Yvette DeAnda alleges that Defendant DoorDash, Inc.'s method of compensating food-delivery providers—known as the "minimum pay guarantee"—deceived her and other DoorDash consumers. DoorDash disputes the merits of Plaintiff's claims, but as a threshold matter, Plaintiff cannot litigate these claims in this Court because she agreed to arbitrate all of her disputes with DoorDash on an individual basis.

When Plaintiff signed up for her first DoorDash account in November 2016, she agreed to DoorDash's Terms & Conditions in effect at that time (the "2016 T&C"). The Arbitration Agreement contained in the 2016 T&C requires Plaintiff to arbitrate her disputes with DoorDash on an individual (non-class) basis. Plaintiff was permitted to opt out of the Arbitration Agreement, but she chose not to do so. Plaintiff continued to use the DoorDash platform after DoorDash updated its Terms and Conditions in 2018 (the "2018 T&C"), and again in 2019 (the "2019 T&C") and did not opt out of either of the 2018 or 2019 T&Cs' materially identical Arbitration Agreements and class-action waivers.

The Supreme Court repeatedly has held that arbitration agreements requiring individualized arbitration must be enforced. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018); *Am. Express Corp. v. Italian Colors Rest.*, 570 U.S. 228, 238–39 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011). The parties' Arbitration Agreement here, including its individualized-arbitration requirement, is valid and enforceable under the Federal Arbitration Act ("FAA"), and covers all of the claims Plaintiff alleges in this action. Many courts have recognized that class-action waivers like the one in DoorDash's T&C must be enforced under the Supreme Court's *Epic Systems* decision. *See, e.g.*, *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 513–14 (9th Cir. 2019); *Azeveda v. Comcast Cable Commc'ns LLC*, 2019 WL 5102607, at *7 (N.D. Cal. Oct. 11, 2019); *Prasad v. Pinnacle Prop. Mgmt. Servs., LLC*, 2018 WL 4599645, at *6 (N.D. Cal. Sept. 25, 2018); *Nguyen v. Impac Mortg.*, 2018 WL 5880825, at *8 (C.D. Cal. Aug. 23, 2018).

The same result should follow here. DoorDash respectfully requests that the Court compel Plaintiff to arbitrate her claims on an individual basis and stay this action. *See* 9 U.S.C. § 3.

**STATEMENT OF RELEVANT FACTS**

**A.    DoorDash's Platform Connects Consumers, Restaurants, And Delivery Contractors**

DoorDash is a technology company headquartered in San Francisco, California that facilitates food delivery through its online platform.  Tang Decl. ¶ 4.  The platform connects consumers, a broad array of restaurants and stores, and independent-contractor delivery providers ("contractors").  *Id.* Consumers can access the platform via the DoorDash website or a mobile application ("DoorDash app") on a smartphone.  *Id.*  Consumers typically place orders via the DoorDash app on their smartphone or other mobile device.  *Id.*  They also pay for the order, including any optional tip to the delivery provider, via the DoorDash app.  *Id.*

**B.    Plaintiff Signs Up For DoorDash Accounts And Agrees To Arbitrate Her Disputes On An Individual Basis Under The 2016 T&C**

Plaintiff agreed to the 2016 T&C when she signed up to create her first DoorDash account in November 2016.  Tang Decl. ¶ 5.  To sign up for an account, Plaintiff had to enter her name, email address, and phone number.  *Id*. ¶ 7.  Immediately above the "Sign Up" button, the sign-up screen stated, "By signing up, you agree to our Terms and Conditions."  *Id*. ¶ 8 & Ex. B.  The words "Terms and Conditions" were highlighted in red text and hyperlinked to DoorDash's 2016 T&C so that the user could review those documents before indicating his or her agreement to them.  *Id.*  On November 10, 2016, Plaintiff entered her name, email address, and phone number into the DoorDash sign-up screen and clicked the "Sign Up" button.  Tang Decl. ¶¶ 7–10.  Accordingly, Plaintiff agreed to the 2016 T&C.[1]

Section 12 of the 2016 T&C is entitled "Dispute Resolution."  *Id.* Ex. C, § 12.  With limited exceptions not relevant here, users "agree[d] that any dispute or claim relating in any way to [their] access or use of the Website of Software, … or to any other aspect of [their] relationship with Company will be resolved by binding arbitration, rather than in court."  *Id.* § 12(a).  The Arbitration Agreement

---

[1]  Plaintiff appears to have created at least four other DoorDash consumer accounts using various email addresses and phone numbers, and thus agreed to the T&C, on the following dates: November 28, 2016; May 24, 2018; September 26, 2018; and November 20, 2018.  Tang Decl. ¶ 5, Ex. A.  Plaintiff appears to have begun, but not completed, the sign-up process for a sixth account and thus did not agree to the T&C as to that account.  Plaintiff requested under thirty-five deliveries across these five accounts, requesting just one delivery with three of these accounts, and no deliveries with one account.  *Id.* ¶ 6.

2

Gibson, Dunn & Crutcher LLP

contains a Waiver of Class or Consolidated Actions:

> ALL CLAIMS AND DISPUTES WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT MUST BE ARBITRATED ON AN INDIVIDUAL BASIS AND NOT ON A CLASS BASIS.  CLAIMS OF MORE THAN ONE CUSTOMER OR USER CANNOT BE ARBITRATED OR LITIGATED JOINTLY OR CONSOLIDATED WITH THOSE OF ANY OTHER CUSTOMER OR USER.

*Id.* § 12(e).  Notably, the Arbitration Agreement also contains a delegation clause.  *See id.* § 12(c) ("The arbitrator, and not any federal, state, or local court or agency" has "exclusive authority" to resolve disputes over the Agreement's "interpretation, applicability, enforceability or formation").

The 2016 T&C permitted users to opt out of the Arbitration Agreement within 30 days of the effective date of the 2016 T&C, explaining:

> **Opt Out.**  You may opt out of this Arbitration Agreement.  If you do so, neither you nor the Company can force the other to arbitrate.  To opt out, you must notify the Company in writing no later than 30 days after first becoming subject to this Arbitration Agreement.  Your notice must include your name and address, your DoorDash username (if any), the email address you used to set up your DoorDash account (if you have one), and an unequivocal statement that you want to opt out of this Arbitration Agreement.  You must send your opt-out notice to: optout@doordash.com.  If you opt out of this Arbitration Agreement, all other parts of this Agreement will continue to apply to you.  Opting out of this Arbitration Agreement has no effect on any other arbitration agreements that you may enter into in the future with us.

*Id.* § 12(f).  Plaintiff did not opt out of arbitration in accordance with the 2016 T&C.  Tang Decl. ¶ 12.  Therefore, Plaintiff consented to the 2016 T&C's Arbitration Agreement.

The 2016 T&C stated that DoorDash "reserves the right to modify the terms and conditions of this Agreement or its policies related to the Service or Software at any time, effective upon posting of an updated version of this Agreement on the Service or Software."  *Id.* Ex. C, p. 1.  The 2016 T&C notified Plaintiff that "[c]ontinued use of the Service or Software after any such changes shall constitute your consent to such changes."  *Id.*

## C.    Plaintiff Continues To Use The DoorDash Platform And Agrees To The 2018 T&C

Plaintiff later consented to the 2018 T&C by continuing to use the DoorDash platform after DoorDash posted the 2018 T&C on its website.  Tang Decl. ¶¶ 13–16.  Bold, capitalized text in the second paragraph of the first page of the 2018 T&C put users on notice of the existence of the Arbitration Agreement.  *Id.* Ex. D, p. 1.

Gibson, Dunn & Crutcher LLP

Section 12 of the 2018 T&C is entitled "Dispute Resolution." *Id.* § 12. Under that section, users "agree[d] that any dispute or claim relating in any way to [their] access or use of the Services as a consumer of our Services, … or to any aspect of your relationship or transactions with Company as a consumer of our Services will be resolved by binding arbitration, rather than in court." *Id.* The Arbitration Agreement contains a Waiver of Class or Consolidated Actions:

> **YOU AND THE COMPANY AGREE TO WAIVE ANY RIGHT TO RESOLVE CLAIMS WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT ON A CLASS, COLLECTIVE, OR REPRESENTATIVE BASIS. ALL CLAIMS AND DISPUTES WITHIN THE SCOPE OF THIS ARBITRATION AGREEMENT MUST BE ARBITRATED ON AN INDIVIDUAL BASIS AND NOT ON A CLASS BASIS.**

*Id.* § 12(e). The 2018 T&C also contain a delegation clause. *See id.* § 12(c).

The 2018 T&C state that each consumer has a right to opt out of the arbitration provision within 30 days of the effective date of the 2018 T&C. *Id.* § 12(f). The second paragraph of the 2018 T&C references this opt-out right in capitalized text. *Id.*, p. 1. So does Section 12(f):

> **Opt Out**. You may opt out of this Arbitration Agreement. If you do so, neither you nor the Company can force the other to arbitrate as a result of this Agreement. To opt out, you must notify the Company in writing no later than 30 days after first becoming subject to this Arbitration Agreement. Your notice must include your name and address, your DoorDash username (if any), the email address you used to set up your DoorDash account (if you have one), and a CLEAR statement that you want to opt out of this Arbitration Agreement. You must send your opt-out notice to: opt-out@doordash.com....

*Id.* § 12(f). Plaintiff manifested her consent to the 2018 T&C by continuing to use the DoorDash platform after the 2018 T&C were implemented in April 2018. Tang Decl. ¶¶ 13–16. Plaintiff did not opt out of arbitration in accordance with the 2018 T&C. *Id.* ¶ 16. Therefore, Plaintiff agreed to be bound by the terms of the 2018 T&C's Arbitration Agreement.

**D.    Plaintiff Continues To Use The DoorDash Platform And Agrees To The 2019 T&C**

DoorDash posted its updated 2019 T&C in August 2019. Plaintiff consented to the 2019 T&C by continuing to use the DoorDash platform after August 2019. *See* Tang Decl. ¶¶ 17–19 & Ex. E.

The 2019 T&C stated that DoorDash "reserves the right to modify the terms and conditions of this Agreement or its policies related to the Website, Software, or Services at any time, effective upon posting of an updated version of this Agreement on the Website or Software." *Id.* Ex. E, p. 1. The

Gibson, Dunn &
Crutcher LLP

4

2019 T&C notified Plaintiff that "continued use of the Services after any such changes constitutes your agreement to such changes." *Id.*

Bold, capitalized text on the first page of the 2019 T&C put users on notice of the existence of the Arbitration Agreement. *Id.* Ex. E, p. 1. Section 12 of the 2019 T&C is entitled "Dispute Resolution." *Id.* § 12. Under that section, users "agree[d] that any dispute or claim relating in any way to [their] access or use of the Services as a consumer of our Services, … or to any aspect of your relationship or transactions with Company as a consumer of our Services will be resolved by binding arbitration, rather than in court." *Id.* The Arbitration Agreement contains a materially identical Waiver of Class or Consolidated Actions as the 2018 T&C. *Id.* § 12(e). The 2019 T&C also contain a materially identical delegation clause. *See id.* § 12(c).

The 2019 T&C state that each consumer has a right to opt out of the arbitration provision within 30 days of the effective date of the 2019 T&C. *Id.* § 12(f). The second paragraph of the 2019 T&C references this opt-out right in capitalized text. *Id.*, p. 1. Section 12(f) of the 2019 T&C contains identical language regarding consumers' opt-out rights and obligations as the 2018 T&C. *See id.* § 12(f). Plaintiff manifested her consent to the 2019 T&C by continuing to use the DoorDash platform after the 2019 T&C were implemented in August 2019. Tang Decl. ¶¶ 17–20, Ex. E. Plaintiff did not opt out of arbitration in accordance with the 2019 T&C. *Id.* ¶ 20. Therefore, Plaintiff is bound by the 2019 T&C's Arbitration Agreement.

**E.    Plaintiff Files This Lawsuit Against DoorDash Notwithstanding Her Agreements To Individually Arbitrate Disputes**

Despite agreeing to arbitrate her disputes individually, Plaintiff filed this lawsuit in December 2019, alleging that DoorDash's method of compensating its delivery providers deceived Plaintiff and other DoorDash consumers. Plaintiff alleges that DoorDash is liable for:

1. Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*;
2. Unfair method of competition and unfair or deceptive practice in violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; and
3. False advertising in violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*

Plaintiff seeks to represent a class of "[a]ll individuals in the United States who arranged for food delivery through DoorDash's platform and paid any amount that was designated or otherwise

Gibson, Dunn & Crutcher LLP

represented, in whole or in part, as a gratuity or tip prior to September 24, 2019." Compl. ¶ 36.

## PLAINTIFF SHOULD BE COMPELLED TO ARBITRATE HER CLAIMS ON AN INDIVIDUAL BASIS

The FAA governs this dispute. Here, the parties delegated *to the arbitrator* the two primary "gateway" issues—whether there is a valid arbitration agreement and whether it covers this dispute. The Court must compel arbitration for this reason alone. In any event, both gateway issues are easily satisfied here, and the Supreme Court's decision in *Epic Systems* confirms that the Class Action Waiver is enforceable.

With the exception of actions brought under California's Private Attorneys General Act (not at issue here), every time DoorDash has moved to compel arbitration under one of its consumer or contractor Arbitration Agreements, the court has compelled arbitration or stayed proceedings.[2] Plaintiff can offer the Court no reason to adopt an aberrant result here.

## A.   The Arbitration Agreement Is Governed By The Federal Arbitration Act

The FAA declares a "liberal federal policy" favoring arbitration. *Concepcion*, 563 U.S. at 346; *Epic Sys.*, 138 S. Ct. at 1621. Under the FAA, "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA requires courts to "move the parties to an arbitrable dispute out

---

[2] *See Webb v. DoorDash, Inc.*, No. 19-cv-00665, Dkt. 30 (N.D. Ga. Jan. 9, 2020) (compelling arbitration in a tipping case); *Gaskins v. DoorDash, Inc.*, No. 34-2019-00261915-CU-OE-GDS (Sacramento Super. Ct. Dec. 17, 2019) (compelling arbitration) (Lipshutz Decl. Ex. A); *Mckay v. DoorDash, Inc.*, No. 3:19-cv-4289, Dkt. 39 (N.D. Cal. Oct. 25, 2019) (compelling arbitration); *Farran v. DoorDash, Inc.*, No. 19STCV13945 (L.A. Super. Ct. Sept. 24, 2019) (Lipshutz Decl. Ex. B); *Goldman-Hull v. DoorDash, Inc.*, No. 19-cv-01513, Dkt. 38 at 16:23–17:7 (N.D. Cal. Aug. 22, 2019) (compelling arbitration); *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 899–900 (N.D. Cal. 2018) (compelling arbitration); *Farran v. DoorDash, Inc.* (O.C. Super. Ct. Mar. 7, 2019) (Lipshutz Decl. Ex. C) (compelling arbitration); *Marciano v. DoorDash, Inc.* (S.F. Super. Ct. Dec. 7, 2018) (Lipshutz Decl. Ex. D) (staying proceedings); *Marko v. DoorDash, Inc.* (L.A. Super. Ct. May 29, 2018) (Lipshutz Decl. Ex. E) (compelling arbitration); *Edwards v. DoorDash, Inc.*, 2017 WL 5514302, at *13 (S.D. Tex. Oct. 18, 2017), *report and rec. adopted*, 2017 WL 5514707 (S.D. Tex. Nov. 16, 2017) (compelling arbitration); *Edwards v. DoorDash, Inc.*, 2016 WL 7852532, at *14 (S.D. Tex. Dec. 8, 2016), *report and rec. adopted*, 2017 WL 244862 (S.D. Tex. Jan. 19, 2017) (compelling arbitration after severing two provisions that are not in the T&C), *aff'd*, 888 F.3d 738 (5th Cir. 2018); *DoorDash, Inc. v. Marciano* (Santa Clara Super. Ct. Mar. 21, 2016) (Lipshutz Decl. Ex. F) (compelling arbitration of complaint filed before California Division of Labor Standards Enforcement); *Lyons v. DoorDash, Inc.*, No. 2:17-cv-01496 (C.D. Cal. May 19, 2017) (Lipshutz Decl. Ex. G).

DOORDASH, INC.'S MOTION TO COMPEL ARBITRATION AND STAY
CASE NO. 4:19-CV-08305-JST

Gibson, Dunn & Crutcher LLP

of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

Here, the FAA governs the Arbitration Agreement for two independent reasons. **First**, the Agreement expressly states that it is governed by the FAA (Tang Decl. Ex. E, § 12(b)) which is sufficient to bring it within the purview of the FAA.[3] *See Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 63–64 (1995); *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468–71 (2015). Courts apply the FAA—even absent evidence of interstate commerce—if the parties so agree. *See Montes v. San Joaquin Cmty. Hosp.*, 2014 WL 334912, at *5 (E.D. Cal. Jan. 29, 2014) (courts honor parties' contractual agreement to be bound by the FAA); *Valencia v. Smyth*, 185 Cal. App. 4th 153, 179 (2010) (where no party alleged that the contract affected interstate commerce, "the language of the Agreement … dictates the applicable law"); *Rodriguez v. Am. Techs., Inc.*, 136 Cal. App. 4th 1110, 1116, 1121 (2006).

The operative 2019 T&C (like the previous versions) expressly states that the "Arbitration Agreement is governed by the Federal Arbitration Act in all respects." Tang Decl. Ex. E, § 12(b). Courts must "enforce arbitration agreements according to their terms," including this choice-of-law provision selecting the FAA. *Epic Sys.*, 138 S. Ct. at 1619; *see also Mastrobuono*, 514 U.S. at 62–64 (construing choice-of-law provision in favor of arbitration).

**Second**, the FAA applies because the Agreement "affect[s] commerce." *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74, 281 (1995) (FAA's requirement that an agreement "involve[e] commerce" is "broad and is indeed the functional equivalent of 'affecting'" commerce, "even if the parties did not contemplate an interstate commerce connection"). The phrase "involving commerce" is "functional[ly] equivalent" to the phrase "affecting commerce," which "normally signals Congress' intent to exercise its Commerce Clause powers to the full." *Id.* at 273. This is so "even if the parties did not contemplate an interstate commerce connection." *Id.* at 281; *accord Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). For the FAA to apply, a party need not "show[] any specific

---

[3] All citations are to the 2019 T&C. If the Court determines an earlier version of the T&C applies (it should not do so), the result would be the same because, as relevant to this motion, each version has materially identical provisions.

DOORDASH, INC.'S MOTION TO COMPEL ARBITRATION AND STAY
CASE NO. 4:19-CV-08305-JST

effect upon interstate commerce," as long as in the aggregate the economic activity in question would represent "a general practice ... subject to federal control." *Alafabco*, 539 U.S. at 56–57.

Courts regularly apply the FAA where, as here, a contract involves transactions and communications over email and the Internet. *See Manard v. Knology, Inc.*, 2010 WL 2528320, at *3 (M.D. Ga. June 18, 2010) (FAA governed contract for Internet services); *Burks v. Autonomy, Inc.*, 2012 WL 13005954, at *3 (S.D. Fla. May 15, 2012) (FAA governed contract with "software company dealing in Internet content management solutions with clients across the United States"); *Scott v. Yoho*, 248 Cal. App. 4th 392, 402 (2016) (FAA governed contract when doctor engaged in Internet advertising and communication with out-of-state patients by telephone, mail, and email).

Here, the FAA applies because DoorDash "is a technology startup … that facilitates food delivery through its online platform," and its "platform connects consumers, a broad array of restaurants, and [contractors]. Consumers can access the platform via the DoorDash website or a mobile application … on a smartphone. Consumers typically place orders via the DoorDash app on their smartphone or other mobile device. They also pay for the order, including any optional tip to the delivery provider, via the DoorDash app." Tang Decl. ¶ 4; *see also* Aughney Decl. ¶¶ 4–8 (explaining interstate nature of DoorDash's business).[4]

## B. The Arbitration Agreement Is Valid And Must Be Enforced

Because arbitration is a matter of contract, the FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of a party to the agreement. 9 U.S.C. § 4. In determining whether to compel arbitration under the FAA, courts generally look at two "gateway" issues: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002). Any doubt as to the proper interpretation of the agreement on any issue related to arbitrability "should be resolved *in favor of arbitration*, whether the problem at hand is the construction

---

[4] Courts unanimously have concluded that the FAA governs DoorDash's Independent Contractor Agreement, which (like the 2019 T&C) explicitly provides that the FAA governs and also affects interstate commerce. *See, e.g.*, *Magana*, 343 F. Supp. 3d at 899; *Farran* (Lipshutz Decl. Ex. C), at 1; *Marko* (Lipshutz Decl. Ex. E), at 2; *Edwards*, 2017 WL 5514302, at *13; *Marciano* (Lipshutz Decl. Ex. F), at 4; *Lowe v. DoorDash, Inc.*, No. BC715425 (L.A. Super. Ct. Apr. 18, 2019) (Lipshutz Decl. Ex. H), at 9.

Gibson, Dunn & Crutcher LLP

of the contract language itself or an allegation of waiver, delay, or a like defense of arbitrability." *Moses H. Cone*, 460 U.S. at 24–25 (emphasis added); *see also Ericksen, Arbuthnot, McCarthy, Kearney & Walsh Inc. v. 100 Oak Street*, 35 Cal. 3d 312, 320 (1983) (citing *Moses H. Cone* for same).

### 1.    The Delegation Clause In The Arbitration Agreement Is Valid And Enforceable

Before reaching these gateway issues, however, a court must first determine whether the parties agreed to commit threshold questions of arbitrability to the arbitrator.  *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional antecedent agreement the party seeking arbitration asks the court to enforce …."). If the parties have "clearly and unmistakably" agreed to delegate questions of arbitrability to the arbitrator, then the arbitrator must decide the threshold issues.  *Howsam*, 537 U.S. at 83; *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (courts may not override delegation clauses); *see also Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208–09 (9th Cir. 2016) (clear and unmistakable delegation clauses must be enforced); *Brennan v. Opus Bank*, 796 F.3d 1125, 1132 (9th Cir. 2015) (same).

Here, the Arbitration Agreement clearly and unmistakably provides that "[t]he arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement." Tang Decl. Ex. E, § 12(c).  Moreover, the Arbitration Agreement expressly incorporates the JAMS Streamlined Arbitration Rules ("JAMS Rules").  *Id.* § 12(b).  Rule 8 of the JAMS Rules provides: "The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." Lipshutz Decl. Ex. I at R.8(b).  The express incorporation of the JAMS Rules therefore constitutes further clear and unmistakable evidence of the parties' intent to arbitrate the threshold issue of arbitrability.  *Emilio v. Sprint Spectrum L.P.*, 508 F. App'x 3, 4 (2d Cir. 2013) (incorporation of JAMS rules shows clear and unmistakable intent to delegate questions of arbitrability); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1284 (10th Cir. 2017) (same); *Cooper v. WestEnd Capital Mgmt., L.L.C.*, 832 F.3d 534, 546 (5th Cir. 2016) (same); *Greenspan v. LADT, LLC*, 185 Cal. App. 4th 1413, 1441–43 (2010) (same).  The Court should enforce this clear and unmistakable agreement and decide only the issue of the enforceability of the Arbitration Class Action Waiver.  *See Mohamed*, 848 F.3d at 1209

Gibson, Dunn & Crutcher LLP

(enforcing delegation clause).

Courts repeatedly have held that if an arbitration agreement provides an opportunity to opt out, it is not adhesive and there can be no procedural unconscionability. *See Mohamed*, 848 F.3d at 1211; *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002); *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1059 (9th Cir. 2013) (en banc). Courts therefore have upheld delegation clauses found in voluntary arbitration agreements on the ground that they are not unconscionable. *See Mohamed*, 848 F.3d at 1211 (upholding delegation clause found in arbitration agreement that provided right to opt out).

Here, DoorDash conspicuously notified Plaintiff of her right to opt out of the Arbitration Agreement on the very first page of the 2019 T&C, as well as in the Arbitration Agreement with the title, "Opt Out." Tang Decl. Ex. E, § 12(f). The Arbitration Agreement states that: (1) "[a]rbitration is not a mandatory condition of [Plaintiff's] contractual relationship with DOORDASH"; and (2) Plaintiff would "not be subject to any adverse action from DOORDASH" if she opted out. *Id.* Plaintiff had 30 days to notify DoorDash of her desire to opt out, but failed to do so. Tang Decl. ¶¶ 17–20. Indeed, in two recent cases, DoorDash moved to compel arbitration when a plaintiff's attempted opt-out was untimely. In both cases, this Court granted DoorDash's motion, compelled arbitration, and stayed the case. *See Goldman-Hull v. DoorDash, Inc.*, No. 19-cv-01513, Dkt. 38 at 16:23–17:7 (N.D. Cal. Aug. 22, 2019) (Judge Edward Chen); *Mckay v. DoorDash, Inc.*, No. 3:19-cv-4289, Dkt. 39 (N.D. Cal. Oct. 25, 2019) (Judge Maxine Chesney). This same result should occur here, where Plaintiff did not opt out of the Arbitration Agreement.

## 2. The Gateway Issues Under The FAA Have Been Satisfied

Even if the Court were to find that it, and not an arbitrator, should determine arbitrability despite the delegation clause (it should not), the Court should compel Plaintiff's claims to individual arbitration because both of the "gateway" issues under the FAA have been met here.

### a. A Valid Agreement To Arbitrate Exists

"[A]rbitration is a matter of contract ...." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Ordinary state law principles governing the formation of contracts are therefore used to determine whether the parties agreed to arbitrate. *See First Options of Chi., Inc.*

*v. Kaplan*, 514 U.S. 938, 944 (1995); *Metalclad Corp. v. Ventana Envtl. Organizational P'ship*, 109 Cal. App. 4th 1705, 1712 (2003). The moving party's burden is light in this regard. DoorDash need only show, by a preponderance of the evidence, that an agreement to arbitrate exists. *See Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996).

Under California law, a valid contract exists when (1) the parties are capable of contracting, and there is (2) a lawful object, (3) mutual consent, and (4) sufficient cause or consideration. Cal. Civ. Code § 1550; *see also Div. of Labor Law Enforc. v. Transpacific Transp.*, 69 Cal. App. 3d 268, 275 (1977). The Arbitration Agreements contained in the 2019 T&C meet all of these requirements.

First, there is no dispute that the parties are capable of contracting. *See* Cal. Civ. Code § 1556 ("All persons are capable of contracting, except minors, persons of unsound mind, and persons deprived of civil rights.").

Second, there is also no dispute that the Arbitration Agreements have a lawful purpose, *i.e.*, the prompt and efficient resolution of disputes in arbitration. *See Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1586 (2005) (finding arbitration provision had lawful purpose of resolving litigation); *see also Epic Sys.*, 138 S. Ct. at 1621 (by enacting the FAA, "Congress directed courts to ... treat arbitration agreements as 'valid, irrevocable, and enforceable'").

Third, there is mutual consent. Plaintiff affirmatively acknowledged her intent—after ample opportunity for review—to be bound by the terms of the 2019 T&C, including the conspicuous Arbitration Agreement contained therein. *See Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049–50 (2001) ("Every contract requires mutual assent or consent (Cal. Civ. Code §§ 1550, 1565), and ordinarily one who signs an instrument which on its face is a contract is deemed to assent to all its terms."). Plaintiff manifested her consent to the 2016 T&C by clicking "Sign Up" directly above the words "By signing up, you agree to our Terms and Conditions," with a hyperlink directing her to the 2016 T&C. Tang Decl. ¶¶ 7–10; *see Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75–80 (2d Cir. 2017) (vacating order denying motions to compel arbitration after holding that availability of a contract "only by hyperlink does not preclude a determination of reasonable notice" and that the plaintiff "unambiguously manifested his assent to [the contract] as a

matter of California law").[5]    Further, Plaintiff's continued use of the DoorDash platform after DoorDash posted the updated 2019 T&C manifested her assent to the updated terms.  In addition to Plaintiff's affirmative assent, DoorDash provided Plaintiff ample opportunity to review the 2019 T&C, and 30 days after accepting the 2019 T&C to opt out of the Arbitration Agreement.  Tang Decl. Ex. E, § 12(f).  Plaintiff did not opt out of the Arbitration Agreement under the terms of the ICA (*id.* ¶ 20), further evidencing her consent to be bound by its terms.

Fourth, the Arbitration Agreement is supported by valid consideration: the parties' mutual promises to arbitrate disputes.  *See Strotz v. Dean Witter Reynolds, Inc.*, 223 Cal. App. 3d 208, 216 (1990) ("Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial determination and to arbitrate their disputes provide consideration for each other."), *overruled on other grounds by Rosenthal v. Great W. Fin. Secs. Corp.*, 14 Cal. 4th 394 (1996).  All of the elements for the valid formation of an agreement to arbitrate exist here.

### b.    Plaintiff's Claims Are Covered By The Arbitration Agreement

"[A]bsent some ambiguity in the agreement ... it is the language of the contract that defines the scope of disputes subject to arbitration."  *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).  Courts must "interpret the contract by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration."  *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996); *see also United Steelworkers*, 363 U.S. at 582–83 (courts must conclude disputes are covered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.").

---

[5] *See also*, *e.g.*, *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015) (compelling arbitration and finding contract was formed when plaintiff clicked on a button to indicate assent to an agreement whose terms were accessible by hyperlink); *Tompkins v. 23andMe, Inc.*, 2014 WL 2903752, at *8 (N.D. Cal. June 25, 2014) (holding that contract had been formed when plaintiff "clicked a box or button that appeared near a hyperlink to the [contract] to indicate acceptance of the [contract]"); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 910–12 (N.D. Cal. 2011) (compelling arbitration and finding video game user bound by Zynga's terms of service because she clicked the "accept" button immediately above a hyperlink which contained its terms); *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862–63 (2016) (distinguishing a "browsewrap" agreement seeking to bind plaintiff to Terms of Use agreement merely by visiting the website from an enforceable "clickwrap" agreement which requires an affirmative act of consent).

DOORDASH, INC.'S MOTION TO COMPEL ARBITRATION AND STAY
CASE NO. 4:19-CV-08305-JST

Gibson, Dunn & Crutcher LLP

Here, there is no ambiguity in the agreement. Rather, the Arbitration Agreement makes clear that Plaintiff's claims are subject to arbitration. Specifically, Plaintiff agreed that the Arbitration Agreement would apply to:

> ***any dispute or claim relating in any way to your access or use of the Services as a consumer of our Services***, to any advertising or marketing communications regarding the Company or the Services, to any products or services sold or distributed through the Services that you received as a consumer of our Services, or to ***any aspect of your relationship or transactions with Company as a consumer of our Services***.

Tang Decl. Ex. E, § 12(a) (emphases added). In her Complaint, Plaintiff claims DoorDash improperly allocated tips she included for delivery providers when she used DoorDash's Platform. This dispute falls squarely within the scope of the Arbitration Agreement.

## C.    The Arbitration Class Action Waiver Is Valid And Enforceable

As noted above, under the delegation clause in the Arbitration Agreement, the parties agreed that the Court would decide the question of the enforceability of the Arbitration Class Action Waiver. Tang Decl. Ex. E, § 12(c). It is now well-settled that class-action waivers in arbitration agreements governed by the FAA are valid and enforceable. In *Magana*, for example, this Court enforced DoorDash's class-action waiver and compelled the plaintiff to arbitration on an individual basis. 343 F. Supp. 3d at 901. The court in *Webb* specifically held that the class action waiver is enforceable, and ruled that "[b]ecause the class action waiver is enforceable, Plaintiffs' claims can be individually arbitrated." *Webb v. DoorDash, Inc.*, No. 19-cv-000665, Dkt. 30 (N.D. Ga. Jan. 9, 2020). The *Farran* court likewise acknowledged the validity of these waivers. Lipshutz Decl. Ex. C, at 2 ("Plaintiff does not … challenge the class action waivers…. The Court notes that these waivers are permitted under the FAA."). So did the *Marko* court, holding that the plaintiffs in that case "shall arbitrate their independent contractor status and claims for damages on an individual basis, rather than on a class basis." Lipshutz Decl. Ex. E, at 2;

The Supreme Court has held that the FAA's "primary purpose" is "ensuring that private agreements to arbitrate are enforced ***according to their terms***." *Volt Info. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) (emphasis added); *see also Mastrobuono*, 514 U.S. at 53–54 (enforcement of arbitration agreements "according to their terms" is the "central purpose" of the FAA); *Concepcion*, 563 U.S. at 344 (same). Most recently, the Supreme Court held

Gibson, Dunn & Crutcher LLP

that this instruction by Congress to enforce arbitration agreements according to their terms "include[s] terms providing for individualized proceedings." *Epic Sys.*, 138 S. Ct. at 1619.

The Arbitration Class Action Waiver bars Plaintiff from litigating or arbitrating her claims on a classwide basis. Tang Decl. Ex. E, § 12(e) (parties agreed to individualized arbitration and waived "class, collective, and representative" actions). Under binding Supreme Court precedent, the parties' agreement not to pursue class, collective, or representative claims is valid and must be enforced. *See Dorman*, 780 F. App'x at 514 ("Because arbitration is a matter of contract, the … waiver of class-wide and collective arbitration must be enforced according to its terms, and the arbitration must be conducted on an individualized basis.") (quotation marks and citation omitted); *Azeveda*, 2019 WL 5102607, at *7 (recognizing that "[c]lass action waivers are enforceable where an employee has an opportunity to opt out" and compelling arbitration); *Prasad*, 2018 WL 4599645, at *6 ("[T]he waiver provision is not unconscionable and [the plaintiff] cannot maintain the class, collective and representative claims."); *Nguyen*, 2018 WL 5880825, at *8 (*Epic Systems* precludes argument "that the class and collective action waivers are unfair").

Plaintiff should be compelled to arbitrate her claims on an individual basis pursuant to the terms of the Arbitration Agreement, and these proceedings should be stayed. 9 U.S.C. § 3; *Magana*, 343 F. Supp. 3d at 902 (applying the FAA's "plain language" and deciding to stay—rather than dismiss—case pending arbitration).

## CONCLUSION

This Court should compel arbitration on an individual basis and stay this action.

Dated: February 27, 2020                    GIBSON, DUNN & CRUTCHER LLP


By:  ____*/s/ Joshua Lipshutz*____
                   Joshua S. Lipshutz


Attorneys for Defendant DOORDASH, INC.

Gibson, Dunn & Crutcher LLP

## PROOF OF SERVICE

I, Timothy Kolesk, declare as follows:

I am employed in the County of Los Angeles, State of California; I am over the age of eighteen years and am not a party to this action; my business address is 333 South Grand Avenue, Los Angeles, California 90071, in said County and State.  On February 27, 2020, I served the following document(s):

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY; MEMORANDUM OF POINTS AND AUTHORITIES**

**DECLARATION OF STANLEY TANG**

**DECLARATION OF CODY AUGHNEY**

**DECLARATION OF JOSHUA LIPSHUTZ**

**[PROPOSED] ORDER**

On the parties stated below, by the following means of service:

> James C. Shah
> Shepherd, Finkelman, Miller & Shah, LLP
> 201 Filbert Street, Ste. 201
> San Francisco, CA 94133
> Telephone: (415) 429-5272
> Facsimile: (866) 300-7367
> Email: jshah@sfmslaw.com

☑   **BY ELECTRONIC TRANSFER TO THE CM/ECF SYSTEM**:  On this date, I electronically uploaded a true and correct copy in Adobe "pdf" format the above-listed document(s) to the United States District Court's Case Management and Electronic Case Filing (CM/ECF) system. After the electronic filing of a document, service is deemed complete upon receipt of the Notice of Electronic Filing ("NEF") by the registered CM/ECF users.

On the parties stated below, by the following means of service:

> Michael Owens (PHV forthcoming)
> EDGAR LAW FIRM LLC
> 2600 Grand Blvd., Ste. 400
> Kansas City, MO 64108
> Telephone: (816) 531-0033
> Facsimile: (816) 531-3322
> Email: MRO@edgarlawfirm.com

Gibson, Dunn &
Crutcher LLP

15

DOORDASH, INC.'S MOTION TO COMPEL ARBITRATION AND STAY
CASE NO. 4:19-CV-08305-JST

☑   **BY OVERNIGHT DELIVERY:** On the above-mentioned date, I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed it to the persons at the addresses shown above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier with delivery fees paid or provided for.

Executed on February 27, 2020

_/s/ Timothy Kolesk_
Timothy Kolesk

Gibson, Dunn &
Crutcher LLP

16