**SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**
JAMES C. SHAH (SBN 260435)
201 Filbert Street, Ste. 201
San Francisco, CA 94133
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
Email: jshah@sfmslaw.com

**EDGAR LAW FIRM LLC**
JOHN F. EDGAR (PHV forthcoming)
MICHAEL OWENS (PHV forthcoming)
2600 Grand Blvd., Ste. 400
Kansas City, MO 64108
Telephone: (816) 531-0033
Facsimile: (816) 531-3322
Email: jfe@edgarlawfirm.com
       MRO@edgarlawfirm.com

*Attorneys for Plaintiff and the proposed Class*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| YVETTE DeANDA, individually and on behalf of a Class of similarly situated individuals,<br><br>            Plaintiff,<br><br>     v.<br><br>DOORDASH, INC.,<br><br>            Defendant. | CASE NO. 4:19-cv-08305-JST<br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY (ECF NO. 19)**<br><br>Action Filed: December 20, 2019<br><br>Honorable Judge Jon S. Tigar<br><br>Hearing Vacated As Matter Suitable For Disposition Without Oral Argument (ECF No. 22) |

# TABLE OF CONTENTS

Table of Authorities ............................................................................................................. ii

I.    INTRODUCTION ................................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................................... 3

    A.   Plaintiff's Claims ........................................................................................... 3

    B.   "Notice" and "Access" To The 2016, 2018, And 2019 T&Cs ............................... 3

III.  LEGAL STANDARD ............................................................................................... 4

IV.   ARGUMENT ............................................................................................................ 5

    A.   There Was Insufficient Notice for Plaintiff to Assent to the 2016 T&C ................ 6

        1.   Courts have rejected hyperlink designs and presentations more conspicuous than DoorDash's hyperlink to the 2016 T&C ............................. 8

        2.   DoorDash's sign-up process for its couriers highlights the inconspicuous nature of the 2016 T&C hyperlink ................................................................ 11

        3.   There was no notice for Plaintiff to assent to the 2018 or 2019 T&C ............ 13

V.    CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abernathy v. DoorDash, Inc.*,
  2020 WL 619785 (N.D. Cal. Feb. 10, 2020) ....................................................................... 1, 2

*Applebaum v. Lyft, Inc.*,
  263 F. Supp. 3d 454 (S.D.N.Y. 2017) ................................................................................ 8, 9

*Arena v. Intuit Inc.*,
  2020 WL 1189849 (N.D. Cal. Mar. 12, 2020) .................................................................... 7, 8

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986) ................................................................................................................ 5

*Berkson v. Gogo LLC*,
  97 F. Supp. 3d 359 (E.D.N.Y. 2015) ..................................................................................... 11

*Colgate v. JUUL Labs, Inc.*,
  402 F. Supp. 3d 728 (N.D. Cal. 2019) ............................................................................ passim

*Cullinane v. Uber Tecs, Inc.*,
  893 F.3d 53 (1st Cir. 2018) .................................................................................................. 8, 9

*Edwards v. DoorDash, Inc.*,
  2016 WL 7852532 (S.D. Tex. Dec. 8, 2016) ........................................................................... 6

*Edwards v. DoorDash, Inc.*,
  2017 WL 5514302 (S.D. Tex. Oct. 18, 2017) .......................................................................... 6

*Lyons v. DoorDash, Inc.*,
  No. 2:17-cv-01496, 2017 WL 8944760 ................................................................................... 6

*Magana v. DoorDash, Inc.*,
  343 F. Supp. 3d 891 (N.D. Cal. 2018) ..................................................................................... 5

*Memory Integrity, LLC v. Intel Corp.*,
  178 F. Supp. 3d 1022 (D. Or. 2016) ......................................................................................... 7

*Meyer v. Uber Techs., Inc.*,
  868 F.3d 66 (2d Cir. 2017) ........................................................................................................ 8

*Nguyen v. Barnes & Noble Inc.*,
  763 F.3d 1171 (9th Cir. 2014) ............................................................................................ 6, 7

*Ramone v. Lang*,
  2006 WL 905347 (Del.Ch. Apr. 3, 2006) ..................................................................................7

*Rodman v. Safeway Inc.*,
  2015 WL 604985 (N.D. Cal. Feb. 12, 2015), *aff'd, 694* F. App'x 612 (9th Cir. 2017) ...........13

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
  489 U.S. 468 (1989) ..................................................................................................................4

**<u>Statutes</u>**

9 U.S.C. § 2 ........................................................................................................................................4

Cal. Bus. & Prof. Code §§ 17200 .....................................................................................................2

Cal. Bus. & Prof. Code §§ 17500 .....................................................................................................2

Cal. Civ. Code § 1750 .......................................................................................................................2

I.        INTRODUCTION

The arbitration practices of Defendant, DoorDash, Inc. ("DoorDash" or "Defendant"), have been the subject of recent controversy. Just last month, Judge Alsup of this District emphatically rejected DoorDash's attempt to evade the arbitration provisions its food delivery couriers are bound to:

> For decades, the employer-side bar and their employer clients have forced arbitration clauses upon workers, thus taking away their right to go to court, and forced class-action waivers upon them too, thus taking away their ability to join collectively to vindicate common rights. The employer-side bar has succeeded in the United States Supreme Court to sustain such provisions. The irony, in this case, is that the workers wish to enforce the very provisions forced on them by seeking, even if by the thousands, individual arbitrations, the remnant of procedural rights left to them. The employer here, DoorDash, faced with having to actually honor its side of the bargain, now blanches at the cost of the filing fees it agreed to pay in the arbitration clause. No doubt, DoorDash never expected that so many would actually seek arbitration. Instead, in irony upon irony, DoorDash now wishes to resort to a class-wide lawsuit, the very device it denied to the workers, to avoid its duty to arbitrate. This hypocrisy will not be blessed, at least by this order.

*Abernathy v. DoorDash, Inc.*, 2020 WL 619785, at *4 (N.D. Cal. Feb. 10, 2020).

The *Abernathy* opinion went even further. Based on the information presented before the *Abernathy* court, it appeared DoorDash may have also been colluding with a new arbitrator to set up an alternative and more favorable forum to arbitrate the workers' claims—which it attempted to conceal from the public—at the same time it was attempting to renege on arbitrating the workers' claims before the American Arbitration Association ("AAA"):

> DoorDash had begun to require couriers, in order to sign in for new work, to click through a new agreement that required arbitration with the International Institute for Conflict Prevention & Resolution (CPR), instead of AAA.
>
> . . . .
>
> The materials sought to be sealed here all relate to email communications between CPR and respondent's counsel, Gibson Dunn, in 2019. In short, the emails track the following events: in May 2019, Gibson Dunn reached out to CPR to discuss issues DoorDash was having with filing fees for mass arbitrations, and to find a solution to prevent "an abuse of process." In October 2019, CPR provided Gibson Dunn with a draft of a mass arbitration protocol for discussion. A week later, CPR provided Gibson Dunn with another draft of the protocol based on their discussion.

Gibson Dunn "interlineated comments, questions, and recommendations" in the new draft. CPR and Gibson Dunn traded additional drafts and revisions in the following weeks. On November 4, CPR notified Gibson Dunn that it had posted the finalized new protocol and asked to be notified when the new DoorDash contracts providing for arbitration under CPR were distributed. Just because such information has been designated as confidential does not mean that it deserves to be kept from the public once filed in the federal district court. The district court should not be a party to concealing this information from the public, especially as it concerns an arbitration organization that holds itself out to the public as impartial. These documents would be useful to the public in evaluating the true extent to which the organization is impartial. The motion to seal is accordingly DENIED.

*Id.* at *2, *4.[1]

Of course, despite DoorDash's efforts to equate this action to those arising out of its contractual agreements with its couriers, *Abernathy* is a different proceeding concerning a different contract. Here, the issue here is whether the arbitration provisions of DoorDash's 2016, 2018, and/or 2019 Terms and Conditions ("T&C") govern the consumer protection claims asserted by Plaintiff, Yvette DeAnda ("Plaintiff"), under the California Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* They do not, for the simple reason that Plaintiff never assented to those arbitration provisions.

As discussed in more detail below, DoorDash provided insufficient notice to apprise Plaintiff of the 2016 T&Cs when she first signed up in 2016, and DoorDash has failed to proffer any facts suggesting that Plaintiff received any notice of the 2018 or 2019 T&Cs. Thus, Plaintiff respectfully requests that the Court deny Defendant's Motion to Compel Arbitration and Stay.

---

[1] To be clear, though counsel for DoorDash in *Abernathy* overlap with DoorDash's counsel in this matter, Plaintiff's counsel appreciate their working relationship with DoorDash's counsel, and there is no indication of any similar conduct here.

## II. FACTUAL BACKGROUND

### A. Plaintiff's Claims

Plaintiff brought this putative class action on behalf of herself and similarly-situated consumers who used DoorDash's platform to order food delivery and paid additional amounts beyond the base bill prior to September 24, 2019. (ECF No. 1, ¶ 36.)[2] Based on DoorDash's representations, Plaintiff and members of the proposed class reasonably believed that those additional monies would go entirely to DoorDash's food couriers as gratuity or tip. (*Id.* ¶¶ 21-25, 27-33.) Instead, DoorDash used Plaintiff and class members' supplementary payments to subsidize its own labor costs; it used that money to offset its own monetary obligations to the food delivery couriers, rather than adding those payments as additional compensation. (*Id.* ¶¶ 12-15, 34.) Had Plaintiff and the members of the proposed class known of DoorDash's actual use of their "tips" and "gratuity," they would have opted against subsidizing DoorDash. (*Id.* ¶¶ 26, 35.)

### B. "Notice" and "Access" To The 2016, 2018, And 2019 T&Cs

According to DoorDash, the 2016 T&C containing the arbitration provision at issue was made available to Plaintiff when she first signed up for her DoorDash account in 2016. *See* Declaration of Stanley Tang (ECF No. 19-1) ("Tang Decl."), ¶ 8. As illustrated in the materials DoorDash proffered in support of its motion and reprinted below, the purported hyperlink to the 2016 T&C is in red with no underline, in the smallest font on the page, and directly under a much larger "Sign Up" button:

---

[2] DoorDash ostensibly changed the payment policy with an effective date of September 24, 2019. (ECF No. 1, ¶¶ 20, 33.)

[Screenshot of a mobile "Create Account" signup form with fields for First Name, Last Name, Email, Phone, Password, a red "Sign Up" button, and text "By signing up, you agree to our Terms and Conditions."]

Tang Decl., Ex. C. DoorDash does not assert that Plaintiff is presented with the 2016 T&C hyperlink anytime other than when she signs up for her account.

DoorDash also does not assert that it notified Plaintiff when it issued the 2018 T&C or 2019 T&C. Instead, according to DoorDash, Plaintiff "consented" to the 2018 T&C and 2019 T&C by "continuing to use the DoorDash platform" after DoorDash posted them somewhere on its website. (ECF No. 19, at 3-5.) And though DoorDash asserts that Plaintiff signed up for other accounts in November 28, 2016, May 24, 2018, and September 26, 2018, DoorDash does not assert that the 2016 T&C hyperlink was updated to link to the 2018 T&C. (*Id.*, at 2 n.1.)

III.   **LEGAL STANDARD**

The Federal Arbitration Act provides that an agreement to submit commercial disputes to arbitration shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[P]rivate agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989). But a "party cannot be required to submit to arbitration

any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). As discussed below, Plaintiff did not assent to the 2016, 2018, or 2019 T&C.

## IV.   ARGUMENT

As a preliminary matter, though DoorDash represents that courts have compelled arbitration or stayed proceedings "every time [it] has moved to compel arbitration under one of its consumer or contractor Arbitration Agreements" (ECF No. 19, at 6), DoorDash does not—likely because it cannot—cite to a court enforcing the arbitration provision of its 2016, 2018, or 2019 T&C. Instead, all the orders compelling arbitration that it cites (*id.* at 6 n.2) pertain to its independent contractor agreements ("ICAs") with its food delivery couriers, which, as noted above, DoorDash later attempted to avoid in *Abernathy*:

- *Webb v. DoorDash, Inc.*, No. 19-cv-00665, ECF No. 30, at 2 (N.D. Ga. Jan. 9, 2020) ("Defendant argues that the arbitration agreement clause and class action in the ICAs are valid and enforceable");

- *Gaskins v. DoorDash, Inc.*, No. 34-2019-00261915-CU-UE-GDS, Ruling on Motion to Compel Arbitration and Stay Proceedings, at 2 (Cal. Super. Ct. (Sacramento) Dec. 17, 2019) ("the ICA . . . put[s] the user on notice of the Existence of the Arbitration Agreement") (Declaration of Joshua Lipshutz (ECF No. 19-3) ("Lipshutz Decl."), Ex. A);

- *McKay v. DoorDash, Inc.*, No. 3:19-cv-4289, ECF No. 26, at 11 (N.D. Cal. Aug. 12, 2019) ("Plaintiff agreed to DoorDash's ICA, which contained a mutual arbitration provision");

- *Farran v. DoorDash, Inc.*, No. 19STCV13945, Notice of Ruling, at 3 (L.A. Super. Ct. Sept. 24, 2019) ("The Independent Contractor Agreement has an arbitration clause") (Lipshutz Decl. Ex. B);

- *Goldman-Hull v. DoorDash, Inc.,* No. 19-cv-01513, ECF No. 16 (N.D. Cal. May 22, 2019) ("Plaintiff agreed to the 2017 version of DoorDash's Independent Contractor Agreement") (Declaration of James C. Shah ("Shah Decl."), Ex. 1;

- *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 896 (N.D. Cal. 2018) ("The Arbitration Agreement . . . applies to 'any and all claims arising out of or relating to this Agreement, CONTRACTOR's classification as an independent contractor'");

- *Farran v. DoorDash, Inc.*, 30-2018-0092677-CU-OE-CXC, DoorDash Memo. in support of Pet. to Compel Arb. and Stay Proceedings, at 7 (Cal. Super. Ct. (O.C.) filed July 2,

- 2018) ("Plaintiff entered into the Independent Contractor Agreement ('ICA') with DoorDash") (Shah Decl., Ex. 2);

- *Marciano v. DoorDash, Inc.*, CGS-18-567869, Order Granting Motion to Stay Action, at 2 (Cal. Super. Ct. (S.F.) Dec. 7, 2018) ("other plaintiffs (represented by the same counsel) are presently arbitrating the same independent v. employee issue with DoorDash") (Lipshutz Decl., Ex. D);

- *Marko v. DoorDash, Inc.*, BC659841, Order Granting in part Defendant DoorDash, Inc.'s Petition to Compel Arb., at 2 (Cal. Super. (L.A.) Ct. May 29, 2018) ("Plaintiffs shall arbitrate their independent contractor status and claims . . . in accordance with the Independent Contractor Agreement") (Lipshutz Decl., Ex. E);

- *Edwards v. DoorDash, Inc.*, 2017 WL 5514302, at *1 (S.D. Tex. Oct. 18, 2017), *report and rec. adopted*, 2017 WL 5514707 (S.D. Tex. Nov. 16, 2017) ("The first version of the independent contractor agreement signed by Edwards and Lupo contained an arbitration clause");

- *Edwards v. DoorDash, Inc.*, 2016 WL 7852532, at *1 (S.D. Tex. Dec. 8, 2016), *report and rec. adopted*, 2017 WL 244862 (S.D. Tex. Jan. 19, 2017) ("The version of the independent contractor agreement Plaintiff signed contains an arbitration clause");

- *DoorDash, Inc. v. Marciano*, 2015-1-CV-287843, Order re: Pet. to Compel Arb. of DLSE Compl. and Stay DLSE Proceedings, at 4 (Cal. Super. Ct. (Santa Clara) Mar. 21, 2016) ("DoorDash argues that the FAA governs . . . the Independent Contractor Agreement") (Lipshutz Decl., Ex. F); and

- *Lyons v. DoorDash, Inc.*, No. 2:17-cv-01496, 2017 WL 8944760 (DoorDash Memorandum in support of Motion to Compel Arb. and Stay PAGA Claims), at *1 (C.D. Cal. April 28, 2017) ("When Lyons first signed-up to use [DoorDash's] innovative food delivery platform, he signed an 'Independent Contractor Agreement,' which included a clear and conspicuous agreement to arbitrate").

Not only are the form and content of the ICAs different than the T&Cs at issue here, but, as discussed further below, the marked difference in the presentation, and thus notice, of the ICAs to the couriers underscore the inadequate notice of the T&C to Plaintiff here.

### A.   There Was Insufficient Notice for Plaintiff to Assent to the 2016 T&C

"In determining whether a valid arbitration agreement exists, federal courts 'apply ordinary state—law principles that govern the formation of contracts.'" *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (citation omitted). "Federal courts sitting in diversity look to the law of the forum state—here, California—when making choice of law determinations." *Id.* "Under California law, the parties' choice of law will govern unless section

187(2) of the Restatement (Second) of Conflict of Laws dictates a different result." *Id.* Whether the Arbitration Agreement's choice-of-law provision, *i.e.*, Delaware law (Tang Decl., Ex. C, at 1),³ applies rather than California law depends on whether Plaintiff agreed to be bound by the Arbitration Agreement. *See Nguyen*, 763 F.3d at 1175. But the Court "need not engage in this circular inquiry because both California and [Delaware] dictate the same outcome." *Id*.

Delaware law requires the parties "manifest 'mutual assent to the exchange and consideration,' and '[o]vert manifestations of assent rather than subjective intent control contract formation.'" *Memory Integrity, LLC v. Intel Corp.*, 178 F. Supp. 3d 1022, 1030 (D. Or. 2016) (quoting *Ramone v. Lang*, 2006 WL 905347, at *10 (Del.Ch. Apr. 3, 2006)) (brackets in original). Likewise, under California law, "[m]utual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract." *Nguyen*, 763 F.3d at 1175 (citation and quotations omitted; brackets in original).

Historically—at least by Internet standards—"[c]ontracts formed on the Internet c[a]me primarily in two flavors: 'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use; and 'browsewrap' agreements, where a website's terms and conditions of use are generally posted on the website via a hyperlink at the bottom of the screen." *Id.* DoorDash "employs a more recent innovation somewhere between these two classic forms of Internet contracting," which courts have described as a "sign-in wrap" agreement. *Arena v. Intuit Inc.*, 2020 WL 1189849, at *2 (N.D. Cal. Mar. 12, 2020). "'Sign-in wrap' agreements are those in which a user signs up to use an internet product or service, and the signup screen states that acceptance of a separate agreement is required before the use can access the service.'" *Id.* (quoting *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 763 (N.D. Cal. 2019)). As the *Arena* court explains:

> Sign-in wrap agreements are valid and enforceable when 'the existence of the terms was reasonably communicated to the user.' [*Colgate*, 402 F Supp. 3d] at 764. In other words, if Plaintiffs "were on inquiry notice of the arbitration provision by virtue of the hyperlink to the [Terms] on the sign-[in] page and

---

³ DoorDash's position appears to be that California law applies. (ECF No. 19, at 11) (citing California law on contracts).

Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Compel
Case No. 4:19-cv-08305-JST                                                                                        -7-

manifested their assent to the agreement by clicking 'sign-[in],' " then there was a valid arbitration agreement. *Id.*

*Id.*, at *3. But DoorDash's notice, like Intuit's in *Arena*, "does not meet this standard." *Id.*

### 1. Courts have rejected hyperlink designs and presentations more conspicuous than DoorDash's hyperlink to the 2016 T&C

To answer the "crucial question of whether 'the hyperlinked text [to DoorDash's 2016 T&C] was itself reasonably conspicuous . . . courts consider factors such as color, size, and font." *Id.* (citing cases). "Many courts have concluded that hyperlinks are sufficiently conspicuous when they are blue and underlined." *Id.* (citing *Cullinane v. Uber Tecs, Inc.*, 893 F.3d 53, 63 (1st Cir. 2018)).[4] "In contrast, when 'the hyperlink [was] wholly indistinguishable from the surrounding text[,]' courts have found that users did not receive adequate notice of the agreement it led to, because '[u]sers cannot be reasonably expected to click on every word of the sentence in case one of them is actually a link.'" *Id.* (quoting *Juul Labs*, 402 F. Supp. 3d at 765).

As with Intuit in *Arena*, DoorDash's 2016 T&C hyperlink "falls short of the gold standard." *Id.* Its 2016 T&C hyperlink is not blue, nor is it underlined. *See* Tang Decl., Ex. B. Instead, the hyperlink is red, which matches the red and white color scheme of its user interface. *See id.* While this may be aesthetically pleasing, that the hyperlink is red actually makes it "less conspicuous to the average consumer." *Arena*, 2020 WL 1189849, at *3 n.3 (rejecting Intuit's argument that the hyperlinks were conspicuous because they were blue and italicized, finding that the "italicization did nothing to identify the hyperlinks as such, because the surrounding text was italicized as well," so "if anything, it appears that italicization would make the notice less conspicuous to the average consumer").

In any event, "courts have rejected the use of color alone to identify a Terms of Service hyperlink." *Id.* at *3 (citing *Juul Labs*, 402 F. Supp. 3d at 765-66; *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 467 (S.D.N.Y. 2017)). This is because reasonable consumers expect other "familiar indicia to inform [them] that there was in fact a hyperlink that should be clicked and

---

[4] In *Meyer v. Uber Techs., Inc.*, which DoorDash cites, the terms and conditions hyperlink that the Second Circuit found to be "reasonably conspicuous" was capitalized and "in blue and underlined," *i.e.*, the "gold standard." 868 F.3d 66, 78 (2d Cir. 2017).

that a contract should be reviewed, such as words to that effect, underlining, bolding, capitalization, italicization, or large font." *Applebaum*, 263 F. Supp. 3d at 467 (citing cases). DoorDash's 2016 T&C hyperlink has none of those "familiar indicia." Instead, it is "in the smallest font on the screen, [and] dwarfed by the jumbo-sized" "Sign Up" button immediately above it. *Id.* at 466. Moreover, not only is the hyperlink "not underlined, [but it is] the same size as the sentence [it is] in," and, unlike the "jumbo-sized" "Sign Up" button right above it, is not a button and is "formatted differently." *Juul Labs*, 402 F. Supp. 3d. at 766.

"Courts have found more conspicuous hyperlinks to be insufficient." *Id.* at 764-65. For example, the First Circuit in *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 62-63 (1st Cir. 2018), found that a "gray rectangular box with the language 'Terms of Service & Privacy Policy' displayed in a larger font, in bold, contrasting in color, and highlighted by the box around it was not reasonably conspicuous." *Id.*:



*Cullinane*, 893 F.3d at 57. Indeed, the 2016 T&C hyperlink design and placement is very similar to one of hyperlinks that the court found inadequate in *Juul Labs*. *Compare* Tang Decl., Ex. C:





*with Juul Labs*, 402 F. Supp. 3d. at 765:



Moreover, unlike even the inadequate notice that Intuit provided for TurboTax Online, DoorDash does not assert that the 2016 T&C hyperlink appears "immediately under the sign-in button, every time consumers sign[] in." *Id.* Instead, the hyperlink appears only once—when the consumer signs up—which only confirms the lack of adequate notice. *See Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 401 (E.D.N.Y. 2015) (noting that sign-in wrap agreements are more likely to be upheld "where the hyperlinked 'terms and conditions' is next to the only button that will allow the user to continue use of the website" and where the "user ... was presented with hyperlinks to the 'terms of use' on subsequent visits") (collecting cases).

### 2. DoorDash's sign-up process for its couriers highlights the inconspicuous nature of the 2016 T&C hyperlink

The inadequacy of the notice provided by the design and presentation of the 2016 T&C hyperlink is underscored by DoorDash's design and presentation of the ICA for its prospective couriers during their sign-up process, which DoorDash described in detail in *Goldman-Hull*:

> To sign up for an account with the DoorDash platform, Plaintiff had to enter his email address, phone number, and zip code. *Id.* ¶ 7. The sign-up screen provided a box that the user must check to proceed, which provides "I agree to the **Independent Contractor Agreement** and have read the **Dasher Privacy Policy**":



Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Compel
Case No. 4:19-cv-08305-JST                                                                                                      -11-

*Id.* ¶ 8 & Ex. C.

The words "Independent Contractor Agreement" and "Dasher Privacy Policy" were highlighted in red text and hyperlinked to the 2017 ICA and Dasher Privacy Policy so that the user could review those documents before indicating his or her agreement to them. Tang Decl. ¶¶ 8, 10 & Ex. A. In order to create a DoorDash account, the user had to click the box to indicate his or her agreement to the 2017 ICA. *Id.*, ¶¶ 8–10. In the event that a user clicked the "Sign Up" button without first checking the box to indicate agreement to the 2017 ICA, the user would be unable to proceed and would receive a message in bold black text and highlighted in a yellow box: "**You must accept this agreement to continue!**"

[screenshot of DoorDash sign-up form with "Get your first check this week" heading, email/phone/zip fields, consent checkbox referencing Independent Contractor Agreement and Dasher Privacy Policy, yellow "You must accept this agreement to continue!" banner, red "Sign Up" button, and "Already started signing up?" link]

Shah Decl., Ex. 1 (DoorDash's Motion to Compel Arbitration and Stay in *Goldman-Hull*, 3:19-cv-01513-EMC, ECF No. 16) (emphasis in original).

The contrast is stark: whereas the 2016 T&C is presented as a "sign-in wrap" agreement appearing only once, the ICA is presented through a "clickwrap" agreement, where an affirmative confirmation of assent is required; and whereas a consumer could easily miss and bypass the 2016 T&C hyperlink, which is in smaller font and overshadowed by the "jumbo-

sized" "Sign Up" button right above it, a prospective courier "would be unable to proceed and would receive a message in bold black text and highlight in a yellow box: '**You must accept this agreement to continue**.'" As such, it is no surprise that courts have found that prospective couriers received adequate notice of the ICA. Meanwhile, the contrast between the two sign-up processes indicates that DoorDash viewed the 2016 T&C hyperlink as an afterthought for both it and the prospective consumer.

### 3. There was no notice for Plaintiff to assent to the 2018 or 2019 T&C

DoorDash also contends that Plaintiff somehow assented to the 2018 or 2019 T&C posted somewhere on its website solely because she continued using the DoorDash platform. (ECF No. 19, at 3, 12.) This assertion, which the Court has rejected at least once before in another matter, is without merit. *See Rodman v. Safeway Inc.*, 2015 WL 604985, at *9-10 (N.D. Cal. Feb. 12, 2015), *aff'd*, 694 F. App'x 612 (9th Cir. 2017) ("Safeway contends that, because Class Members read the initial registration contract, every time they opted to go forward with an online purchase after registration, they were on notice that they were assenting to a new contractual agreement, governed by the Special Terms operative elsewhere on the website at the time of that purchase. The Court rejects this argument") (Tigar, J.).

As this Court went on to explain, "'[p]arties to a contract have no obligation to check the terms on a periodic basis to learn whether they have been changed by the other side.'" 2015 WL 604985, at *10 (citation omitted). Thus, "[e]ven if a customer's continued use of a service could be considered assent to revised terms, 'such assent can only be inferred after [that customer] received proper notice of the proposed changes.'" *Id.* Here, DoorDash provides nothing to suggest that Plaintiff received notice of the revisions to the T&C in 2018 and 2019, much less "proper notice"; indeed, as noted above, DoorDash only maintains that the 2016 T&C hyperlink appears during sign-up, not sign-in for continued use, and fails to even assert that the sign-up T&C hyperlink was updated to access the 2018 or 2019 T&Cs instead of the 2016 T&C.

## V. CONCLUSION

For the reasons explained above, Plaintiff respectfully requests that the Court deny DoorDash's Motion to Compel Arbitration and Stay [ECF No. 19].

Dated: March 26, 2020                                Respectfully submitted,

                              **SHEPHERD, FINKELMAN, MILLER & SHAH, LLP**

By: James C. Shah
James C. Shah (SBN 260435)
201 Filbert Street, Ste. 201
San Francisco, CA 94133
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
Email: jshah@sfmslaw.com

John F. Edgar (PHV forthcoming)
Michael R. Owens (PHV forthcoming)
**EDGAR LAW FIRM LLC**
2600 Grand Blvd., Ste. 400
Kansas City, MO 64108
Telephone: (816) 531-0033
Facsimile: (816) 531-3322
Email: jfe@edgarlawfirm.com
       MRO@edgarlawfirm.com

*Attorneys for Plaintiff*