UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVETTE DEANDA,<br><br>              Plaintiff,<br><br>       v.<br><br>DOORDASH, INC.,<br><br>              Defendant. | Case No. 19-cv-08305-JST<br><br>**ORDER GRANTING MOTION TO COMPEL**<br><br>Re: ECF No. 19 |

Before the Court is Defendant DoorDash, Inc.'s motion to compel arbitration and stay the litigation.  ECF No. 19.  The Court will grant the motion.

## I.      BACKGROUND

### A.      Factual and Procedural Background

Plaintiff Yvette DeAnda is a customer of DoorDash, an online and app-based food delivery platform.  ECF No. 1 ("Compl.") ¶ 3.  She alleges that DoorDash has engaged in deceptive tipping practices, representing that consumers' tips would benefit drivers but instead using those tips to fund the minimum payments that DoorDash guarantees its drivers.  *Id.* ¶ 14.  On December 20, 2019, DeAnda filed a complaint on behalf of herself and a nationwide class of all consumers who placed a food delivery order through DoorDash and "paid any amount that was designated or otherwise represented, in whole or in part, as a gratuity or tip prior to September 24, 2019."  *Id.* ¶ 36.  She brings three claims under California law, for violations of (1) the Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; (2) the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and (3) the False Advertising Law ("FAL"), *id.* §§ 17500, *et seq.*  Compl. ¶¶ 44-71.  DeAnda seeks damages, injunctive relief, and attorney's fees and costs.  *Id.* at 14.

United States District Court<br>Northern District of California

On February 27, 2020, DoorDash filed this motion to compel arbitration and stay the litigation. ECF No. 19. DeAnda filed an opposition, ECF No. 23, and DoorDash filed a reply, ECF No. 24. On April 24, 2020, DoorDash filed a notice of supplemental authority alerting the Court to an order that it issued on April 23, 2020, in the related case *Peter v. DoorDash, Inc.*, No. 19-cv-8305-JST. ECF No. 25. In that order, the Court granted DoorDash's motion to compel arbitration of consumer claims arising from the same tipping policy at issue here. *Peter v. DoorDash, Inc.*, No. 19-cv-8305-JST, 2020 WL 1967568 (N.D. Cal. Apr. 23, 2020). DeAnda filed a response to that notice, ECF No. 26, and the Court took the matter under submission without a hearing, ECF No. 22.

### B.    Arbitration Provisions

DeAnda set up her first DoorDash account on November 10, 2016. ECF No. 19-1 ¶ 5. She created additional accounts on November 28, 2016, May 24, 2018, September 26, 2018, and November 20, 2019. *Id.* When DeAnda signed up for her first account, she entered her name, email address, phone number, and password on a sign-up screen before clicking a "Sign Up" button below these fields. *Id.* ¶ 7. Directly underneath the "Sign Up" button was the statement, "By signing up, you agree to our Terms and Conditions," with "Terms and Conditions" appearing in red and hyperlinking to the DoorDash Terms and Conditions in effect at the time ("2016 T&C"). *Id.* ¶ 8. DeAnda and other DoorDash users were not required to click through to the T&C in order to complete the sign-up process. *Id.*

Section 12 of the 2016 T&C, entitled "Dispute Resolution," contained an arbitration agreement that read, in relevant part:

> You agree that any dispute or claim relating in any way to your access or use of the Website or Software, to any products or services sold or distributed through the Software or the Website (including the Services), or to any other aspect of your relationship with Company will be resolved by binding arbitration, rather than in court . . . .

*Id.* at 23. The arbitration agreement also included a class action waiver, *id.*, a Delaware choice-of-law provision, *id.* at 26, and a "delegation clause" providing that "[t]he arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Arbitration

United States District Court
Northern District of California

2

Agreement including, but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable[,]" *id.* at 24.

The 2016 T&C allowed consumers to opt out of the arbitration agreement within 30 days of signing up for DoorDash. *Id.* at 25. DeAnda did not opt out. *Id.* ¶ 12. The first page of the T&C, in bolded, capitalized text, included a warning about the arbitration agreement and class waiver and a reference to the user's right to opt out. *Id.* at 15. The 2016 T&C also stated that "the Company reserves the right to modify the terms and conditions of this Agreement or its policies relating to the Software or Services at any time, effective upon posting of an updated version of this Agreement on the Service or Software[,]" and that "continued use of the Services or Software after any such changes constitutes your agreement to such changes." *Id.* at 16.

DoorDash updated its Terms of Service on April 3, 2018 ("2018 T&C") and August 22, 2019 ("2019 T&C"). *Id.* ¶¶ 13, 17. Both T&C's contained materially identical arbitration agreements and choice-of-law provisions to those contained in the 2016 T&C. *Id.* at 37-39, 49-51, 54. DeAnda continued using DoorDash after both of these updates and did not opt out of the arbitration agreements in either the 2018 or 2019 T&C. *Id.* ¶¶ 14, 16, 18, 20.

## II.    JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d).

## III.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted).

On a motion to compel arbitration, the court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207

United States District Court
Northern District of California

F.3d 1126, 1130 (9th Cir. 2000).  If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4. Where the claims alleged in a complaint are subject to arbitration, the Court may stay the action pending arbitration.  *Id.* § 3.

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."  *Green Tree Fin. Corp. Alabama v. Randolph*, 531 U.S. 79, 91 (2000).

## IV.   DISCUSSION

This motion is substantially similar to the motion the Court recently granted in *Peter*.  *See* 2020 WL 1967568.  As in *Peter*, the parties dispute only whether DeAnda assented to DoorDash's Terms and Conditions and is thus bound by the arbitration clause.  ECF No. 23 at 9.  Because the *Peter* plaintiffs signed up for DoorDash in 2019, however, the sign-up process was different.  *See Peter*, 2020 WL 1967568, at *1.  The Court thus adopts the relevant prior holdings from its *Peter* order[1] and focuses only on whether DeAnda assented to the 2016 T&C.[2]

In California, "[a] party petitioning the court to compel arbitration bears the burden of proving by a preponderance of evidence the existence of an arbitration agreement."  *Olvera v. El Pollo Loco, Inc.*, 173 Cal. App. 4th 447, 453 (Cal. Ct. App. 2009) (internal citation omitted), *abrogated on other grounds by Concepcion*, 563 U.S. at 339.  An essential element of a contract is consent.  Cal. Civ. Code § 1550; *see also Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (Cal. Ct. App. 1999) ("To form a contract, a manifestation of mutual assent is necessary.").  Assent is evaluated by an objective standard.  *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 993 (Cal. Ct. App. 1972).

DeAnda argues that she did not assent to the 2016 T&C because DoorDash did not provide

[1] These holdings include: (1) whether DeAnda assented to the arbitration clause is a question for the Court, not the arbitrator, *see Peter*, 2020 WL 1967568, at *3; and (2) California law governs this question, *see id.*

[2] The Court need not determine whether DeAnda assented to the 2018 or 2019 T&C's given that all three contracts contain materially identical arbitration agreements.  If she did assent to the 2018 or 2019 T&C's, then these agreements would require the same outcome as under the 2016 T&C. If she did not assent to the later T&C's, then she would remain bound by the 2016 T&C.

4

sufficient notice of those terms.  ECF No. 23 at 10.  The Ninth Circuit has held that an online contract must put a website user on actual or inquiry notice of its terms.  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).  Whether a user has inquiry notice of such an agreement "depends on the design and content of the website and the agreement's webpage."  *Id. Nguyen* distinguished between two forms of online contracts:  (1) "clickwrap" agreements, "in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use," which courts generally enforce, and (2) "browsewrap" agreements, "where a website's terms and conditions are generally posted on the website via a hyperlink at the bottom of the screen," which courts view with skepticism.  *Id.* at 1175-76.  A third category of agreement has become known as a "sign-in wrap," in which a website "notif[ies] the user of the existence of the website's terms of use and, instead of providing an 'I agree' button, advise[s] the user that he or she is agreeing to the terms of service when registering or signing up."  *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75-76 (2d Cir. 2017); *see also Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 763 (N.D. Cal. 2019).  Courts find these agreements valid "where the existence of the terms was reasonably communicated to the user."  *Meyer*, 868 F.3d at 76 (collecting cases); *see also Colgate*, 402 F. Supp. 3d at 764.

DeAnda argues that she was not on notice of the 2016 T&C because the sign-up page's hyperlink to the terms was in the same size font as the surrounding sentence, was not formatted as a "button," was not underlined, and was not in blue.  ECF No. 23 at 12-13.  However, this page is similar in most material respects to the *Peter* sign-up page, which the Court held put plaintiffs on inquiry notice of the T&C in place at the time.  ECF No. 28 at 8.  The *Peter* page also linked to the T&C via hyperlinked text rather than a formatted "button."  *See Peter*, No. 19-cv-8305-JST, ECF No. 17-1 at 14.  This text was in the same size font as the rest of the sentence and was not underlined.  The only relevant difference between the two sign-up pages is that the *Peter* page used blue text to link to the T&C and the page at issue here uses red text.  *Compare Peter*, No. 19-cv-6098, ECF No. 17-1 at 14, *with DeAnda*, No. 19-cv-8305, ECF No. 19-1 at 13.

Plaintiffs rely on *Arena v. Intuit Inc.*, No. 19-cv-02546-CRB, 2020 WL 1189849, at *3 (N.D. Cal. Mar. 12, 2020) to argue that this difference matters.  *Arena* found that a sign-in wrap

United States District Court
Northern District of California

agreement was invalid partially because the sign-in page did not use "the gold standard" of a blue, underlined hyperlink. *Id.* But the *Arena* sign-in page was far more cluttered and confusing than the page at issue here. The court rejected that set-up not just because the link was not underlined but because "both the notice and the hyperlinks therein are in the lightest font on the entire sign-in screen," which contained "multiple, confusingly similar hyperlinks" that "[a] reasonable user might well find . . . confounding." *Id.* at \*4. By contrast, the DoorDash sign-in page is simple and streamlined, containing just two, identically formatted hyperlinks – allowing users to access the T&C or to bypass this process if they already have an account – plus a sign-up button that is also in red. *See* ECF No. 19-1 at 13. The red text of the links pops out on the page, and unlike in *Arena*, the surrounding text is darker than the other text on the page. *See id.*

Plaintiffs cite three additional cases that they argue require a different outcome than in *Peter*. ECF No 26 at 3. In *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 64 (1st Cir. 2018), the court held that "the presence of other terms on [a payment screen] with a similar or larger size, typeface, and with more noticeable attributes" undermined the conspicuousness of a link to terms and conditions. The court noted, however, that had the terms-and-conditions link been "found within a registration process interface with a plain design and limited content" – as is the case here – it might have provided adequate notice of those terms. *Id.* at 63. The other two cases Plaintiffs cite were decided before *Meyer*, which the Court factored heavily into its *Peter* analysis. *See Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454 (S.D.N.Y. 2017); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359 (E.D.N.Y. 2015). The Court therefore finds that, like the similar page in *Peter*, the page DeAnda used to sign up for DoorDash in 2016 put her on notice of the 2016 T&C and the arbitration clause therein.

### CONCLUSION

Because DeAnda assented to the 2016 T&C and does not dispute that the arbitration agreement therein governs her claims, the Court GRANTS the motion to compel arbitration and stays the proceedings.

The parties shall submit status reports to the Court within 180 days of the filing date of this order, and additional joint status reports every 180 days thereafter, apprising the Court of the

status of the arbitration proceedings. Within 14 days of the completion of the arbitration proceedings, the parties shall jointly submit to the Court a report advising the Court of the outcome of the arbitration, and a request that the case be dismissed or that the case be reopened and a case management conference be scheduled.

**IT IS SO ORDERED.**

Dated:  August 4, 2020



JON S. TIGAR
United States District Judge